Thomas A. SMITH, Appellant

v.

CITY OF ALLENTOWN;
Ed Pawlowski.

No. 09–1998.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
LAR 34.1(a) Nov. 5, 2009.

Filed Dec. 22, 2009.

Richard J. Orloski, The Orloski Law Firm, Allentown, PA.

Edward J. Easterly, George C. Hlavac, Steven E. Hoffman, Tallman, Hudders & Sorrentino, Allentown, PA.

Before: SCIRICA, Chief Judge, JORDAN and COWEN, Circuit Judges.

## OPINION OF THE COURT

JORDAN, Circuit Judge.

Thomas Smith appeals an order of the United States District Court for the Eastern District of Pennsylvania granting summary judgment in favor of the City of Allentown and its Mayor, Ed Pawlowski, on Smith's claims for discrimination based upon his age and political affiliation. For the reasons that follow, we will affirm.

## I. Background

### A. Facts Underlying Smith's Claims

At the time of Smith's termination on October 19, 2006, he was fifty-five years old and a registered member of the Republican party. He worked as the Superintendent of the City of Allentown Recreation Bureau, a post to which he was appointed in 2000 by former Mayor William Heydt, who also is a Republican. As Superintendent, Smith was responsible for overall management of the Recreation Bureau, including seven full-time staff members and between 150 and 200 part-time, seasonal employees. He prepared budgets, developed new recreation programs, ran the City's organized sports programs, and assisted with the planning of "SportsFest," an annual community festival of athletic events. As Superintendent, he set green fees at the municipal golf course and administered the course's annual marketing budget. He was also responsible, along with the heads of two other City departments, for managing the City's swimming pools.

In November 2001, Democrat Roy Afflerbach succeeded Heydt as Mayor. Smith continued to serve as Superintendent of the Recreation Bureau throughout the Afflerbach administration, weathering a funding crisis and preserving many of the City's recreation programs. In early 2002, Afflerbach appointed appellee Ed Pawlowski as Director of Community and Economic Development. Pawlowski thus became Smith's immediate supervisor in the City government. According to Pawlowski, there were a number of problems with Smith's performance as Superintendent. Pawlowski said that Smith neglected to create new recreational programs or to promote existing recreation offerings. Smith acknowledges that Pawlowski chastised him, and the other department heads who operated the swimming pools, for failing to perform necessary pool upkeep.

In late 2004, Pawlowski resigned in protest over certain policies implemented by the Afflerbach administration. His succes-

sor, and hence Smith's new supervisor, was Lauren Giguere. She developed a performance plan that established a series of goals for the Recreation Bureau. The plan required Smith to establish bureau-wide financial procedures, create a master plan for cooperation between the Recreation Bureau and the Parks Bureau, explore options for constructing new recreation centers, and implement new software programs to increase Bureau efficiency.

In early 2005, Pawlowski announced his candidacy for Mayor of Allentown on the Democratic ticket. The November 2005 general election pitted Pawlowski as the Democratic candidate against former Mayor Heydt on the Republican ticket. Smith supported Heydt's renewed bid for office and placed a pro-Heydt campaign sign in his yard approximately three weeks before the election. Pawlowski ultimately emerged victorious in the election.

Sometime during the first half of 2006, Smith allegedly had a conversation with his friend James Spang, a Democrat who had worked on Pawlowski's campaign.[1] According to Smith, Spang stated that Pawlowski "viewed [Smith] as a political enemy[ ] of sorts" and believed that Smith had improperly attempted to influence two members of the City's recreation commission to support Heydt's bid for Mayor. (App. at 35a.) In contrast, Spang testified that he approached Smith to express concern that Heydt had received preferential invitations to events at SportsFest, while Pawlowski had not. Spang recalled the conversation lasting approximately two minutes, during which he encouraged Smith to refrain from politicizing events and recommended that future invitations be extended in a more neutral fashion. Spang, who does not recall uttering the phrase "political enemy," explained that he approached Smith because he believed that Smith had a future as a candidate for local office and that Smith's political prospects would be placed in jeopardy if he were perceived as using City events for partisan purposes. Spang testified that he never informed Pawlowski of his conversation with Smith, and Smith possesses no knowledge regarding why Spang would have represented that Pawlowski considered Smith a political foe.

In May 2006, then-Mayor Pawlowski appointed Francis Dougherty, who until that time had worked in Philadelphia, to replace Giguere as Director of Community and Economic Development for Allentown. Dougherty conducted a review of Smith's file and determined that Smith had failed to achieve any of the goals set forth in Guigere's performance plan. Smith's view is that he had made progress on the goals, but he concedes that he did not fulfill them within the time allotted under Guigere's plan.[2] Dougherty discovered that during Smith's tenure, the number of rounds played at the municipal golf course had

---

1. It is unclear whether this conversation occurred before or after the November 2005 election. Smith recalls speaking with Spang in the spring of 2006. Spang, on the other hand, testified that he spoke with Smith approximately one year earlier, before the election. Construing the facts in the light most favorable to Smith as the party opposing summary judgment, we credit his recollection of the timing of this conversation.

2. Smith has submitted an affidavit that attempts to shift responsibility for these short-falls but contradicts his deposition testimony acknowledging accountability for some of the problems identified by appellees. We credit Smith's deposition testimony to the exclusion of his affidavit insofar as the two are in conflict. *See Jiminez v. All Am. Rathskeller, Inc.,* 503 F.3d 247, 253 (3d Cir.2007) (stating that a party may not rely upon an affidavit that is inconsistent with the party's prior deposition testimony to create a genuine issue of material fact at the summary judgment stage).

declined and control of the City's Halloween parade had been ceded to a private citizen who was running it with minimal oversight from the Recreation Bureau.[3] After reviewing Smith's performance Dougherty concluded that "Smith did not have the skill sets" to implement the City's vision for its recreation programming. (App. at 201a.)

Dougherty recommended to Pawlowski that Smith be discharged. Pawlowski reviewed Dougherty's recommendation and soon agreed with Dougherty's assessment. In addition to the problems identified by Dougherty, Pawlowski knew his office had received complaints that the golf course was poorly managed and that Smith had not developed new golf programming to promote the course. Dougherty testified that he met with Pawlowski in late June 2006 to discuss Smith's employment status and that, at the close of that meeting, Pawlowski instructed him to terminate Smith's employment. Prior to formally terminating Smith, Pawlowski and Dougherty consulted the City Solicitor and Assistant Solicitor as well as Sonya Stephens, a representative from the City's Human Resources Department ("HR"). All three individuals advised against the termination. Pawlowski and Dougherty nevertheless decided to proceed with the firing.

During a one-on-one meeting with Smith on July 24, 2006, Dougherty informed him that he lacked the skills necessary to perform his employment duties effectively and that he was being given the option to resign or retire. According to Smith,

Dougherty observed that Smith's fifty-fifth birthday and his employment anniversary, which occurred respectively on August 2 and October 2, were approaching and that Pawlowski wanted to receive Smith's resignation by that birthday but no later than the anniversary date.

Following that conversation, Smith prepared a letter describing his accomplishments as Superintendent of the Recreation Bureau, stating that he was not a political enemy of Pawlowski, and requesting that Pawlowski reconsider his termination. Pawlowski reviewed the letter but declined to reconsider. Smith tendered his resignation, effective October 19, 2006. The City subsequently hired Carl Bruno, who at the time was thirty-six years of age, to replace Smith. Bruno served as Superintendent of the Recreation Bureau for six months, after which he was replaced by Kevin Easterling, then forty-two years of age.

HR representative Stephens testified that she was never formally apprised of Smith's termination and that she discovered it through happenstance, though she could not recall precisely how she learned of it. She further explained that, in her opinion, the firing was unwarranted and that conducting a termination meeting without the involvement of an HR representative was unusual.

### B. Procedural History

On October 16, 2007, Smith commenced the present lawsuit. Smith complained that, when terminating his employment,

---

**3.** According to Smith, Everitt Bickford volunteered to coordinate and raise funds for the parade when the City withdrew financial support for it. The City continued to assist Bickford's efforts and provided organizational support for the parade. In early 2006, Pawlowski assigned Smith to work with Bickford to coordinate that year's parade. Bickford became unwilling to cooperate with City personnel and announced a date for the parade that was earlier than usual, without first informing or receiving approval from the City. Smith testified that in response he "did nothing, other than maybe sen[ding] a memo down to the Mayor's office, saying that this was the date [Bickford] had picked." (App. at 63a.)

Pawlowski and the City of Allentown discriminated against him on the basis of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–34, and on the basis of his political affiliation, in violation of his First Amendment rights. Smith claimed that Dougherty's reference to his birthday during the termination meeting revealed age-based animus, and he contended that Stephens's characterization of his discharge as unusual and unwarranted supported his claim. He further asserted that his having a pro-Heydt campaign sign in his yard during the November 2005 election together with Spang's "political enemy" comment provided evidence that he was fired due to his affiliation with the Republican party. Mayor Pawlowski and the City responded that Smith was terminated not because of his age or political affiliation but because he lacked the skills to lead the Recreation Bureau effectively.

With respect to the age discrimination claim, the District Court found that Smith failed to proffer evidence from which a reasonable jury could conclude that defendants' proffered rationale for terminating him was a pretext for age discrimination. Addressing the political affiliation claim, the Court found that Smith's testimony regarding Spang's "political enemy" comment constituted inadmissible hearsay that could not be considered on summary judgment. Because Smith could not identify an alternate source of Pawlowski's alleged political enmity toward him, the Court concluded that Smith lacked admissible evidence that Pawlowski considered Smith a political adversary. It therefore entered summary judgment for Pawlowski and the City on all claims. This timely appeal followed.

## II. Discussion[4]

Smith appeals the District Court's grant of summary judgment on both his ADEA and First Amendment claims. We exercise plenary review over an appeal from a grant of summary judgment. *Jacobs Constructors, Inc. v. NPS Energy Servs., Inc.,* 264 F.3d 365, 369 (3d Cir.2001). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id. (citing* FED.R.CIV.P. 56(c)). "In making this determination, we must consider the evidence in the record in the light most favorable to the nonmoving party." *Id.*

### A. Age Discrimination

 The District Court disposed of Smith's age discrimination claim under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which we have applied to ADEA claims. *See Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1108 (3d Cir.1997) (describing the prima facie showing that a plaintiff must make under *McDonnell Douglas,* as applied to an ADEA claim). Under *McDonnell Douglas,* the plaintiff bears the burden of proof and the initial burden of production, having to demonstrate a prima facie case of discrimination by showing first, that the plaintiff is forty years of age or older; second, that the defendant took an adverse employment action against the plaintiff; third, that the plaintiff was qualified for the position in question; and fourth, that the plaintiff was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus. *Potence v.*

---

4. The District Court exercised federal question jurisdiction over Smith's claims under 28 U.S.C. § 1331. We have appellate jurisdic-tion over the final decision of the District Court under 28 U.S.C. § 1291.

*Hazleton Area Sch. Dist.,* 357 F.3d 366, 370 (3d Cir.2004). Once the plaintiff satisfies these elements, the burden of production shifts to the employer to identify a legitimate non-discriminatory reason for the adverse employment action. *Keller,* 130 F.3d at 1108. If the employer does so, the burden of production returns to the plaintiff to demonstrate that the employer's proffered rationale was a pretext for age discrimination. *Starceski v. Westinghouse Elec. Corp.,* 54 F.3d 1089, 1095 n. 4 (3d Cir.1995). At all times, however, the burden of persuasion rests with the plaintiff. *Id.*

Before the District Court in this matter, the parties stipulated that Smith possessed sufficient evidence to establish a prima facie case and that Smith's allegedly substandard job performance provided appellees with a legitimate, nondiscriminatory rationale for his termination. Thus, the District Court addressed only whether Smith had adduced evidence from which a reasonable jury could conclude that appellees relied upon his job performance as a pretext for age discrimination. Smith predicated his allegations of age discrimination upon several things: first, Dougherty's reference to Smith's birthday and anniversary date during the meeting at which they discussed Smith's termination; second, the recommendations of Stephens, the City Solicitor, and the Assistant Solicitor that Smith not be discharged; and, third, the City's progressive discipline policy, which appellees allegedly failed to utilize prior to discharging him. He also argued that Dougherty, as a recent political appointee from outside the Allentown area, lacked sufficient knowledge about Smith's job performance to reach an informed decision about whether to recommend termination. The Court concluded that such evidence did not cast doubt upon the performance-related reasons that appellees proffered for Smith's discharge.

The Court therefore granted summary judgment to appellees on Smith's ADEA claim.

■ After the District Court rendered its ruling, the Supreme Court decided *Gross v. FBL Financial Services,* —— U.S. ——, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009), which considered whether the burden-shifting framework established by *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), is available to plaintiffs in age discrimination cases. *Gross,* 129 S.Ct. at 2348–49. *Price Waterhouse,* decided under Title VII of the Civil Rights Act of 1964, determined that, if the defendant initiated an allegedly adverse employment action as the result of both permissible and impermissible motives, the burden of persuasion shifts to the defendant to demonstrate that it would have taken the adverse action notwithstanding the improper motive. 490 U.S. at 244–45, 109 S.Ct. 1775; *Watson v. Se. Pa. Trans. Auth.,* 207 F.3d 207, 215 (3d Cir.2000). This burden-shifting framework has become known as the mixed-motive doctrine. *Gross* refused to apply *Price Waterhouse* to ADEA claims for two reasons. First, the Court found that shifting the burden of persuasion to an age discrimination defendant is improper because the plain language of the ADEA requires the plaintiff to prove that the defendant took the adverse employment action "because of [the plaintiff's] age." *Gross,* 129 S.Ct. at 2350–51 (*quoting* 29 U.S.C. § 623(a)(1)). The Court construed this language as requiring that the plaintiff prove but-for causation from the outset of an ADEA case. *Id.* at 2351. Second—and more generally—the Court expressed ambivalence about the utility of burden-shifting in age discrimination claims. The Court noted that it had never definitively applied *McDonnell Douglas* to ADEA claims, *Gross,* 129 S.Ct. at 2349 n.

2, and suggested that burden-shifting, at least of the *Price Waterhouse* variety, has been difficult to apply in practice and that its cumbersome nature has "eliminated any perceivable benefit to extending its framework to ADEA claims." *Id.* at 2352.

Appellees argue that *Gross* renders *McDonnell Douglas's* burden-shifting inapplicable to ADEA cases and that we should dispose of the instant appeal solely by inquiring whether Smith would have retained his job but for the alleged age discrimination. However, we may not depart from our prior decisions applying *McDonnell Douglas* to age discrimination cases unless those decisions are irreconcilable with *Gross. See Mennen Co. v. Atl. Mut. Ins. Co.,* 147 F.3d 287, 294 n. 9 (3d Cir.1998) (noting that a panel of the court may not overrule the decisions of a prior panel unless the earlier disposition "is in conflict with Supreme Court precedent"). While we recognize that *Gross* expressed significant doubt about any burden-shifting under the ADEA, we conclude that the but-for causation standard required by *Gross* does not conflict with our continued application of the *McDonnell Douglas* paradigm in age discrimination cases.

*Gross* stands for the proposition that it is improper to shift the burden of persuasion to the defendant in an age discrimination case. *McDonnell Douglas,* however, imposes no shift in that particular burden. *McDonnell Douglas* provides that, once the employee establishes a prima facie case, the burden of production (i.e., of going forward) shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employer's adverse employment decision. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. If the employer makes that showing, the burden of production shifts once again to the employee to establish that the employer's proffered justification for the adverse action is pre-

textual. *Tex. Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248, 254–55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Throughout this burden-shifting exercise, the burden of persuasion, "including the burden of proving 'but for' causation or causation in fact, remains on the employee." *Starceski,* 54 F.3d at 1095 n. 4 (3d Cir.1995) (citing *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089). Hence, *Gross,* which prohibits shifting the burden of persuasion to an ADEA defendant, does not forbid our adherence to precedent applying *McDonnell Douglas* to age discrimination claims. Decisions of our sister circuits are in accord. *See, e.g., Leibowitz v. Cornell Univ.,* 584 F.3d 487, 2009 WL 3403147, at *8 n. 2 (2d Cir. Oct.23, 2009) (applying *McDonnell Douglas* while recognizing that *Gross* requires the plaintiff to prove that age was the but-for cause of the defendant's adverse employment action); *Geiger v. Tower Auto.,* 579 F.3d 614, 622 (6th Cir.2009) (holding that, following *Gross,* "the *McDonnell Douglas* framework can still be used to analyze ADEA claims based on circumstantial evidence"). We have therefore evaluated Smith's age discrimination claim pursuant to *McDonnell Douglas* to see whether he produced sufficient evidence to establish that appellees' proffered rationale for terminating him was a pretext for age-based discrimination.

■ We conclude that Smith has failed to carry that burden. He exhibited performance problems as early as 2002, when Pawlowski, then director of community and economic development, noted complaints that Smith and two other directors had neglected to maintain the City's swimming pools. In late 2004, Guigere gave Smith a series of performance goals, which it is undisputed Smith failed to accomplish. When Dougherty reviewed Smith's performance in early 2006, he was concerned with problems involving the golf course,

youth sports, and the annual Halloween parade.

Smith nevertheless claims that Pawlowski unlawfully discriminated against him because of his age and that the proof of discrimination is, first, that Pawlowski wanted Smith to resign by Smith's birthday; second, that no one from HR participated in his termination meeting; and third, that the City did not progressively discipline him before ending his employment. None of these pieces of evidence would cause a reasonable jury to find that appellees acted with discriminatory intent when they terminated Smith.

Smith has produced no evidence that Dougherty referenced Smith's fifty-fifth birthday for any reason other than providing a timetable for his resignation. In fact, Smith conceded that Dougherty could have referenced his birthday to ensure that he received an increase in his retirement benefits, which became fully accessible to Smith only when he turned fifty-five. Smith acknowledged that, aside from Dougherty's comment, he had no reason to believe that Pawlowski considered his age when deciding to terminate his employment. Dougherty's lack of personal knowledge about Smith's job performance is likewise immaterial. It is undisputed that Dougherty perused Smith's personnel file, discussed Smith's performance with Guigere, and consulted with Pawlowski in formulating his recommendation that Smith be terminated. Thus, it appears that Dougherty issued his recommendation based upon a thorough review of Smith's performance history with the City of Allentown. Moreover, while the City Solicitor, Assistant Solicitor, and Stephens rec-

ommended against Smith's termination, that recommendation was not binding on Pawlowski, who possessed final decision-making authority to retain or discharge at-will employees. Lastly, Smith has produced no evidence that the City had a mandatory progressive disciplinary policy or that the defendants deviated from any such policy.[5]

Smith clearly received notice of his deficient performance when Guigere established performance goals for his Bureau, if not sooner. Smith further acknowledged that he was an at-will employee and that he understood the City could terminate his employment at any time. Under these circumstances, no reasonable jury could agree that appellees terminated Smith on the basis of age discrimination. Accordingly, the District Court properly granted summary judgment in appellees' favor on his ADEA claim.

### B. Discrimination Based on Political Affiliation

 To succeed on a discrimination claim based on political affiliation, a public employee must make a prima facie showing that "(1) that the employee works for a public employer in a position that does not require a political affiliation, (2) that the employee maintained a political affiliation, and (3) that the employee's political affiliation was a substantial or motivating factor in the adverse employment decision." *Hill v. Borough of Kutztown,* 455 F.3d 225, 243 (3d Cir.2006). Once the plaintiff establishes a prima facie case, the defendant may "avoid a finding of liability by proving by a preponderance of the evidence that the same employment action would have

---

**5.** Smith's opening brief asserts that City of Allentown Regulation No. 6–4–01 imposes a mandatory progressive disciplinary structure, but none of the materials he cites in support of this averment contain the text of the policy

or a description of the disciplinary framework it allegedly imposes. Absent such evidence, Smith's contention that he should have been disciplined instead of terminated cannot stand.

been taken even in the absence of the protected activity." *Galli v. N.J. Meadowlands Comm'n,* 490 F.3d 265, 271 (3d Cir. 2007) (*quoting Stephens v. Kerrigan,* 122 F.3d 171, 176 (3d Cir.1997)). There is, in other words, a shift in the burden of persuasion.[6]

 In the present matter, Smith has established the first two elements of his prima facie case. With regard to the third element, he cited the following evidence as proof that his firing was motivated by his political affiliation: first, the pro-Heydt campaign sign that he placed on his yard during the November 2005 election; second, his alleged reputation as a Heydt supporter; third, Spang's statement that Smith ran the 2005 SportsFest in a manner that favored Heydt's campaign; and fourth, Spang's alleged comment that Pawlowski considered Smith a political enemy.

The available facts, however, do not support an inference that Pawlowski or Dougherty discriminated against Smith on the basis of political affiliation. As to his yard-sign and alleged reputation as a Heydt supporter, Smith has not adduced evidence that Pawlowski or Dougherty knew about either. Dougherty did not even reside in the Allentown area at the time of the 2005 mayoral election, and Pawlowski testified that he did not know where Smith lived. As to Smith's handling of the 2005 SportsFest, it is undisputed that Spang never mentioned his concerns in that regard to anyone other than Smith, and nothing in the record suggests that

Pawlowski was aware of Spang's concern or shared his opinions.

 Finally, the District Court refused to consider Smith's testimony about Spang's "political enemy" comment on hearsay grounds. Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment. *Cf. Shelton v. Univ. of Med. & Dentistry of N.J.,* 223 F.3d 220, 223 at n. 2 (3d Cir.2000) ("In this circuit, hearsay statements can be considered on a motion for summary judgment if they are capable of admission at trial."). Smith's testimony is double hearsay because it describes a statement that Spang made to Smith about a conversation that Pawlowski allegedly had with Spang. Thus, for the "political enemy" comment to be considered on summary judgment, Smith must demonstrate that both layers of hearsay would be admissible at trial. *See* FED.R.EVID. 805 ("Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule. . . ."). If, as Smith alleges, Pawlowski informed Spang that Pawlowski considered Smith a political adversary, that statement would qualify as an admission by a party opponent and would be admissible under Rule 801(d)(2)(A) of the Federal Rules of Evidence. However, Smith offers Spang's repetition of that alleged statement for the truth of the matter asserted (i.e., that Pawlowski considered him a political threat). Spang's repetition is itself therefore hearsay, and it appears to be

---

**6.** The shift of that burden derives from *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), in which the Supreme Court imposed a shift in the burden of persuasion to the defendant in cases where a plaintiff demonstrates that he has engaged in protected conduct and that his exercise of free speech rights was a motivating factor in an

adverse action by the defendant against him. *Id.* at 287, 97 S.Ct. 568. We have applied the same burden-shift in cases that implicate retaliation or discrimination based on political affiliation. *See Laskaris v. Thornburgh,* 733 F.2d 260, 265 (3d Cir.1984) (applying the *Mt. Healthy* burden-shifting framework to discrimination claims based on political affiliation).

beyond the reach of any exception to the hearsay rule. Despite aggressive cross-examination, Spang disavowed any recollection of characterizing Smith as a political enemy of Pawlowski. Thus, Smith has failed to demonstrate that Spang could testify about the substance of the "political enemy" comment at trial, leaving Smith without admissible evidence of Pawlowski's alleged sentiment. Without such evidence, the District Court properly refused to consider the "political enemy" comment for summary judgment purposes.

To sum up, the only admissible evidence Smith possesses that appellees discharged him based on his political affiliation involves speculation about a yard sign and SportsFest. Smith has produced no evidence that Pawlowski knew of the yard sign or of Spang's SportsFest concerns. Absent such knowledge, no reasonable jury could conclude that discriminatory animus lay behind Smith's termination. The District Court thus did not err by entering summary judgment in defendants' favor on Smith's First Amendment discrimination claim.

### III. Conclusion

Smith has failed to produce evidence that his allegedly inadequate job performance was a pretext for unlawful discrimination of any kind. Accordingly, we will affirm the judgment of the District Court.