NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

No. 11-2042
_____


STANLEY N. OZOROSKI,
                                        Appellant
                              v.

DR. FREDERICK R. MAUE,
Chief of Clinical Services, Individually and in his official capacity;
WEXFORD HEALTH SOURCES, INC.;
PRISON HEALTH SERVICES, Individually and in its official capacity;
DR. ADAM A. EDELMAN, Individually and in his official capacity;
MARVA CERULLO, Health Care Administrator SCI Mahanoy, individually;
CECILIA VALASQUEZ, Director of Guadenzia DRC;
GAUDENZIA-DRC, All Defendants Jointly and Severally Liable;
CHERYL CANTEY,Head Medical Supervisor of Gaudenzia DRC


_____


On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-08-cv-00082)
District Judge:  Honorable Christopher C. Conner


_____


Submitted Under Third Circuit LAR 34.1(a)
December 12, 2011

Before: SLOVITER, VANASKIE, *Circuit Judges*
and STENGEL,[*] *District Judge*

_____

[*] Hon. Lawrence F. Stengel, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

(Filed: January 4, 2012)

_____

OPINION

_____

SLOVITER, *Circuit Judge*.

Stanley Ozoroski appeals from the District Court's grant of summary judgment against him on his claims that the Appellees denied him access to necessary medical treatment in violation of his Eighth Amendment rights.[1]

**I.**

Because we write primarily for the parties, our recitation of the facts and procedural history is brief. Ozoroski, an inmate in the Pennsylvania state correctional system, suffered a small bowel perforation[2] during a hernia repair operation in 1993. As a result, Ozoroski underwent multiple corrective surgeries shortly thereafter. Despite ongoing treatment, however, Ozoroski continued to experience abdominal problems and developed an enterocutaneous fistula.[3]

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4). We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review of the District Court's grant of summary judgment, and we apply the same standard applicable in the District Court found in Fed. R. Civ. P. 56. *See Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 362 (3d Cir. 2008).

[2] A small bowel perforation is an abnormal opening in the proximal portion of the intestine distal to the stomach. *See* STEDMAN'S MEDICAL DICTIONARY 247, 1456 (28th ed. 2006).

[3] An enterocutaneous fistula is an abnormal passage connecting the intestine and skin of the abdomen. STEDMAN'S MEDICAL DICTIONARY 735-36 (28th ed. 2006).

Although Ozoroski requested additional surgery to address his abdominal issues, the Pennsylvania Department of Corrections ("DOC") ultimately chose to pursue a non-surgical course of treatment. In fact, while in DOC custody, Ozoroski was treated and evaluated by more than 20 physicians. While some physicians recommended surgery as a potential way to repair Ozoroski's abdomen, others believed that the risks of surgery ultimately outweighed any potential benefits.[4] The DOC therefore denied Ozoroski's repeated requests for surgery. Nevertheless, approximately 13 years after his initial hernia operation, Ozoroski was released into the custody of Gaudenzia Drug Rehabilitation Center[5] ("Gaudenzia") and, during his stay, he underwent surgery to repair his abdomen.

Subsequently, Ozoroski filed a complaint in federal court under 42 U.S.C. § 1983, alleging that the prison health services and individual medical personnel deprived him of necessary medical treatment during his incarceration at the state correctional institutions at SCI-Rockview and SCI-Mahanoy respectively, and during his subsequent stay at Gaudenzia. After several defendants were dismissed by the District Court, the Court granted summary judgment for the remaining Defendants. Ozoroski timely appealed.

## II.

Ozoroski claims that the District Court erred by finding that Dr. Frederick Maue, Chief of Clinical Services of the Bureau of the Department of Corrections; Marva

---

[4] As one physician stated, a surgical correction of Ozoroski's condition would involve "the possibility of severe lifetime disability, debility and even death." App. at 151.

[5] Although Ozoroski was transferred to the Gaudenzia Drug Rehabilitation Center, he remained under the control of the DOC.

Cerullo, a healthcare administrator at SCI-Mahanoy; and Wexford Health Sources, Inc., a corporation that previously contracted with the DOC to provide healthcare services to inmates, were entitled to summary judgment under the applicable statute of limitations because of the Continuing Violations Doctrine. We disagree.

"The statute of limitations period for a § 1983 claim arising in Pennsylvania is two years." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). That period begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991). The Continuing Violations Doctrine, however, is an "equitable exception to the timely filing requirement," which applies "when a defendant's conduct is part of a continuing practice" and is "more than the occurrence of isolated or sporadic acts." *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001). Under the Doctrine, "an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Id.*

Here, Ozoroski's claims against Wexford, Dr. Maue and Cerullo do not fall within the Continuing Violations exception. In particular, Wexford contracted with the DOC to provide healthcare services to inmates from September 1996 to August 31, 2003. Ozoroski, however, did not file the underlying action until January 14, 2008 – more than four years later. Thus, even under the most expansive interpretation of the Continuing Violations Doctrine, it would not apply to the claims against Wexford, since the corporation had no authority to provide Ozoroski with medical care during the two-year limitations period.

Further, the Doctrine does not extend to Ozoroski's claims against Dr. Maue or Cerullo because their alleged conduct was not connected to any "continuing practice" but instead amounted to isolated incidents. In fact, Dr. Maue's involvement in Ozoroski's treatment was limited to two letters dated November 10, 2003 and October 20, 2004, which stated that it was his medical opinion and that of other physicians that surgery was not in Ozoroski's best interests. As the District Court appropriately reasoned, "[t]he two letters amount to little more than discrete, isolated events not appropriately linked to some larger scheme to deny Ozoroski's medical care." App. at 10. Ozoroski's claims against Cerullo rest on an equally isolated event – her refusal to permit an application for pre-release to be filed on Ozoroski's behalf. Furthermore, since Ozoroski filed a grievance in connection with Cerullo's refusal to file his pre-release application on November 9, 2004, we find that her conduct was sufficiently permanent to "trigger [Ozoroski's] awareness of and duty to assert his . . . rights" during the limitations period. *Cowell*, 263 F.3d at 292. Nevertheless, he did not bring suit until more than three years after Cerullo and Dr. Maue's alleged conduct. Therefore, his claims against Cerullo and Dr. Maue are also barred as untimely.

Ozoroski also argues that the District Court erred by granting summary judgment on his Eighth Amendment claims in favor of Prison Health Services, Inc. ("PHS"), another healthcare provider contracted to provide healthcare services to DOC inmates; Dr. Adam Edelman, director of PHS; Cecilia Velasquez, director of Gaudenzia; and Cheryl Cantey, head medical supervisor of Gaudenzia.

To establish Eighth Amendment liability against a private employer, such as PHS, the prisoner must "provide evidence that there was a relevant PHS policy or custom . . . that . . . caused the constitutional violation [he] allege[s]." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003). The District Court did not err in finding that Ozoroski presented insufficient evidence to establish an Eighth Amendment violation. As the District Court noted, his treating and consulting physicians had varying views on whether surgery was appropriate to treat his condition. The record demonstrates that Dr. Edelman exercised his professional judgment and we can find no evidence that he consciously disregarded Ozoroski's medical needs. Moreover, Ozoroski failed to show that Velasqez or Cantey demonstrated deliberate indifference to his serious medical needs once he reached Gaudenzia, where he continued to attend various medical appointments and ultimately obtained surgery to repair his abdomen.

Ozoroski contends that PHS maintained a policy and practice "of focusing on medical costs instead of the patient's best interest." Appellant's Br. at 28. In support of his claims, he offers a peer review article, an online newspaper article noting that Wexford terminated its contract due to soaring costs, and a 2008 PHS white paper discussing the rising costs of providing healthcare services.[6] These documents contain only general information regarding the delivery of cost-effective healthcare and therefore

---

[6] With regard to his claims against Wexford, Appellant also submitted copies of Wexford's website pages, which discuss Wexford's goal of providing cost-effective healthcare to its clients. Although we decide Appellant's claims against Wexford on statute of limitations grounds, we note that Appellant's evidence also fails to establish that Wexford maintained a policy or custom that caused the deprivation of Appellant's constitutional rights.

fail to create a material question as to whether PHS maintained a policy or custom that caused the deprivation of Ozoroski's constitutional rights.[7]

## III.

For the foregoing reasons, we will affirm the District Court's entry of summary judgment in all respects.

---

[7] The parties dispute whether these documents constitute inadmissible hearsay evidence. *See Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009) ("Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment."). Even assuming *arguendo* that the documents are admissible, they do not provide a basis for imposing Section 1983 liability.