**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———

No. 12-1291
———

PETER ABELS
Appellant

v.

DISH NETWORK SERVICE, LLC
———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2:10-cv-01550)
District Judge: Honorable Terrence F. McVerry
———

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 11, 2012

Before: GREENAWAY, JR., NYGAARD and VAN ANTWERPEN, *Circuit Judges*

(Filed: December 12, 2012 )
———

OPINION OF THE COURT
———

VAN ANTWERPEN, *Circuit Judge*.

Peter A. Abels ("Abels") filed suit against DISH Network Service, LLC ("DISH")

alleging age discrimination in violation of the Age Discrimination in Employment Act

("ADEA"), codified at 29 U.S.C. § 621 *et seq*. The District Court granted DISH's

motion for summary judgment, and Abels now appeals from that decision. For the reasons that follow, we will affirm.

## I.

Abels was hired by DISH in June of 2000, when he was forty-two years old, to work as a Field Service Specialist in DISH's East Pittsburgh location. In 2002, at the urging of Warehouse Manager Brian Manns ("Manns"), Abels transferred to work in the warehouse as an Inventory Specialist. Manns was Abels' immediate supervisor, and Manns was in turn supervised by the General Manager Paul Pevornik ("Pevornik"). In 2002, at the age of forty-four, Abels was promoted from Inventory Specialist to Senior Inventory Specialist. In 2003, when Abels was forty-five, DISH implemented a Reduction in Force ("RIF"), which affected Inventory Specialists. During the RIF, Dish retained its two oldest inventory specialists, including Abels, and terminated the youngest. From 2003, when he was age forty-five, until 2008, when he was age fifty-one, Abels received positive employment evaluations and annual raises.

While employed by DISH, Abels frequently complained about coworkers smoking too close to the warehouse door. Though smoking does not make Abels physically ill, it upset him that coworkers were violating the company's smoke free policy. In response to Abels' numerous complaints, DISH created a designated smoking area, sent emails reminding employees to use the designated smoking area, issued the same reminders during meetings, and reminded employees caught smoking outside of the designated area to only smoke within the designated area. DISH also placed a "NO SMOKING" sign outside the warehouse door, purchased a receptacle for cigarette butts, and placed it away

2

from the warehouse door. This was principally done to accommodate Abels, though he asserts these actions accomplished nothing, and he continued to complain about the smoking issue.

In 2006, Abels got in an argument with a Quality Assurance Specialist who walked into the warehouse with a cigarette. During the argument, Abels yelled at the Specialist, called him names, and used profanity.[1]

Lynne Shawley, the Human Resources Representative for several DISH locations, including East Pittsburgh, had received numerous complaints from other employees regarding Abels' poor attitude and his hostile, belligerent, and gruff demeanor. Though Abels argues that Shawley failed to document these complaints, he admits that sometime in the month preceding his termination, Shawley met with him to discuss the complaints. Additionally, as a result of personal interactions with Abels, Shawley found that Abels exhibited a disgruntled and hostile attitude and that he had difficulty moving beyond past perceived wrongs.

On February 26, 2009, Abels left the premises in the middle of his shift without permission. Abels claims he went to Pevornik's office to complain that his computer access had been limited, and that Installations Manager Frank Grubbs ("Grubbs") was with Pevornik and witnessed the meeting. Abels asserts Pevornik "lied to [his] face" about the computer issue, and that Abels then began to feel sick to his stomach. Abels alleges that at this point he announced he was sick and that he was going home for the

---

[1] Abels was written up for his conduct, but refused to sign the Written Warning because he found it unjust that he was written up while someone who had violated the smoke free policy did not receive a warning.

3

day. He claims that on his way out of the warehouse, he ran into his immediate supervisor Manns, informed Manns he was sick and going home early, and that Manns responded, "okay, see you tomorrow." Abels also claims he told David Stone ("Stone"), a coworker, he was going home sick. Abels concedes he never sought permission to leave early from Pevornik or Manns, and he never received permission from Pevornik.[2]

Grubbs does not remember this meeting, and while Pevornik remembers the meeting, he asserts that Abels only complained about employees smoking. Pevornik claims he left his office to investigate Abels' smoking allegations, and when he returned, Abels had gone.

Manns stated he crossed paths with Abels as he was entering the building and Abels was leaving. He described their brief conversation as follows:

> I'm like "Hey, what's going on?" [Abels] says, "I'm outta here." I said, "Well, what's up?" He goes, "I'm sick from smoking. I'm going home." He goes, "They're out back. They're smoking again." I said, "Well, come on in and sit down and let's talk about it." He said, "I already talked to [Pevornik]."

Manns did not discuss the matter further because Pevornik was Mann's supervisor, and he did not believe it necessary to delve into a matter already settled by his supervisor.

Shawley testified that Pevornik informed her Abels had left without permission because he was angry about the smoking situation. Shawley spoke with Manns about the

---

[2] Abels does not argue that Manns gave him permission to leave early when he allegedly said "okay see you tomorrow." It is apparent that Manns did not give permission for two reasons. First, Abels did not ask for permission from Manns to leave early, so the alleged "see you tomorrow" was not in response to a request. Second, Manns testified he wanted to talk further with Abels about the issue before he left, but Abels declined, saying he had already met with Pevornik.

incident after Pevornik notified her, and Manns told her Abels had said, "I'm outta here" before he departed, and that Abels had not mentioned anything about being sick.

Stone remembered that Abels told him he was leaving work early, but could not recall if Abels had told him he was leaving because he was sick.

Shawley recommended that DISH treat Abels' conduct as a voluntary resignation. In reaching this decision, she relied on her prior conversations with Abels, the frequent complaints she had received about Abels, the information provided her by Pevornik and Manns regarding Abels' angry departure in the middle of his shift, and her experience in human resources. Manns was assigned the task of informing Abels that DISH was treating his conduct as a voluntary resignation; Shawley told Manns what to tell Abels, and Pevornik instructed Manns to follow Shawley's script. Manns did so.

Abels filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), which issued a Notice of Right to Sue letter on August 23, 2010. On November 22, 2010, Abels filed a complaint in the federal District Court for the Western District of Pennsylvania, alleging that DISH had discriminated against him on the basis of age, in violation of the ADEA. On September 30, 2011, DISH moved for summary judgment. On December 15, 2011, a Magistrate Judge filed a Report and Recommendation, recommending that DISH's motion be granted. On January 30, 2012, the District Court issued an order granting DISH's motion for summary judgment and adopting the Report and Recommendation of the Magistrate Judge as the opinion of the District Court, and Abels timely appealed.

**II.**

5

The District Court had jurisdiction under 28 U.S.C. § 1331, and we exercise jurisdiction under 28 U.S.C. § 1291. We apply plenary review to an appeal from a district court's grant of summary judgment. *Jacobs Constructors, Inc. v. NPS Energy Servs., Inc.*, 264 F.3d 365, 369 (3d Cir. 2001). Summary judgment shall be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "In making this determination, we must consider the evidence in the record in the light most favorable to the nonmoving party." *Jacobs Constructors, Inc.*, 264 F.3d at 369 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material if it "could affect the outcome of the proceeding, and a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Roth v. Nofalco LLC*, 651 F.3d 367, 373 (3d Cir. 2011) (citations and internal quotation marks omitted).

## A. Legal Framework for ADEA Claims

The District Court analyzed the motion for summary judgment under the analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, the plaintiff bears the burdens of persuasion and production to establish a prima facie case of age discrimination.[3] *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009). After the plaintiff satisfies this

---

[3] A plaintiff establishes a prima facie case of discrimination under the ADEA if he provides proof that: 1) the plaintiff was forty years of age or older; 2) that the plaintiff suffered an adverse employment action; 3) that the plaintiff was qualified for the job; and 4) that the plaintiff was replaced by someone who was sufficiently younger than plaintiff to support an inference of discriminatory animus. *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009).

requirement, the burden of production, but not persuasion, shifts to the defendant to provide evidence of a legitimate non-discriminatory reason for the adverse employment action. *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997). If the defendant provides this evidence, the burden shifts back to the plaintiff to demonstrate that the defendant's justification was a pretext for discriminatory animus. *City of Allentown*, 589 F.3d at 691. The plaintiff always has the burden of persuasion. *Id.*

The plaintiff may demonstrate that the defendant's legitimate nondiscriminatory reason is pretextual by submitting evidence that allows a fact finder to either 1) disbelieve or discredit the employer's justification; or 2) believe discrimination was more likely than not a "but for" cause of the adverse employment action. *Fuentes v. Perksie*, 32 F.3d 759, 764 (3d Cir. 1994); *see also Keller*, 130 F.3d at 1108 (applying *Fuentes* in ADEA context). Regardless of the method, the plaintiff's evidence must allow a reasonable jury to find, by a preponderance of the evidence, that age discrimination was a "but for" cause for the adverse employment action. *Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 177-78 (2009); *City of Allentown*, 589 F.3d at 691.

Abels argues on appeal that the District Court erred in finding that Abels did not discredit DISH's legitimate nondiscriminatory reasons for its decision to treat Abels' conduct as a voluntary resignation.

## B.  Application to Current Case

Abels attempted to meet his burden at step three of the *McDonnell Douglas* framework by discrediting DISH's explanation for its adverse employment action, under the first prong of *Fuentes*, and he claims the District Court erred in holding he did not

7

sustain his burden.[4]  As support, Abels notes he testified that he had informed his superiors that he was sick and had to leave, and that none of DISH's witnesses contradicted him.  Abels claims the District Court erred in finding this did not sufficiently discredit DISH's legitimate nondiscriminatory reason for discharging him.

To discredit an employer's proffered justification under the first prong of *Fuentes*

> the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence, . . . , and hence infer that the employer did not act for [the asserted] non-discriminatory reasons.

*Fuentes*, 32 F.3d at 765 (emphasis in original) (citation and internal quotation marks omitted).  In this matter, DISH considered the following in deciding to treat Abels' conduct as a voluntary resignation: his angry departure in the middle of his shift without permission, his hostile and belligerent demeanor, and the numerous complaints from his coworkers about him.  Abels must provide evidence that will "allow a factfinder to reasonably infer that *each* of [DISH's] proffered non-discriminatory reasons  . . . was either a *post hoc* fabrication or otherwise did not actually motivate the employment action . . . ."  *Id.* at 764 (emphasis in original) (internal citations omitted). While Abels need not discredit each reason articulated, he must "cast substantial doubt on a fair number of them" so that "the factfinder's rejection of some of the defendant's proffered reasons may impede the employer's credibility seriously enough so that a factfinder may

---

[4] The parties concede, for purposes of this motion, that Abels made out his prima facie case.  In addition, Abels does not argue DISH did not satisfy its burden to produce evidence of a legitimate nondiscriminatory reason for the adverse employment action.

8

rationally disbelieve the remaining proffered reasons. . . ." *Id.* at 764 n.7. Abels claims that none of DISH's witnesses contradicted his assertion that he informed several supervisors and a coworker that he was going home sick. Even if this were true, it is irrelevant for three reasons.

### 1. It is immaterial whether Abels told any supervisors he was sick

Whether Abels told his supervisors that he was sick is not a material fact because it does not "affect the outcome of the proceeding." *Roth*, 651 F.3d at 373. Abels' health was not the basis for DISH's action; DISH treated Abels as having voluntarily resigned because, in part, he left work early without permission. Therefore, the lack of permission to leave work early is the material fact, about which Abels must demonstrate a "genuine dispute." FED. R. CIV. P. 56(a). There is no such dispute regarding this fact. Abels admits he did not request permission to leave early from either Pevornik or Manns; he informed them he was leaving, and did not await a response. Abels also concedes that Pevornik did not give him permission to leave early. The fact that Abels told his supervisors that he was sick, if true, does not create a genuine issue as to whether he left mid-shift without permission.[5]

### 2. Abels has not shown DISH's decision was motivated by age-based discrimination

Abels must show that age-based discrimination was a "but-for" cause of this decision; he "cannot simply show that the employer's decision was wrong or mistaken,

---

[5] Abels attempts to cast doubt regarding the issue of permission by arguing that Shawley and Pevornik said employees who were ill could leave without permission. A reading of the deposition transcripts to which Abels cites, however, reveals that is not what either of them said. Pevornik testified that managerial approval was needed before an employee could leave mid-shift.

9

since the factual dispute at issue is whether the discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Fuentes*, 32 F.3d at 765; *see also Gross*, 557 U.S. at 176-78 (plaintiff must show age-based discriminatory animus is a "but-for" cause of adverse employment action). "'The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination].'" *Keller*, 130 F.3d at 1109 (quoting *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996)).

The evidence shows that Abels was terminated after Shawley made the recommendation to treat Abels' conduct as a voluntary resignation and Pevornik accepted that recommendation. Pevornik informed Shawley that Abels was angry and disgruntled and had left in the middle of his shift. Shawley then spoke with Manns about the incident, who told her that Abels had only said "I'm outta here" before he left. As a result, both Shawley and Pevornik believed that Abels had left work angrily that day, without permission, due to the smoking situation, not illness. For purposes of the ADEA, it is irrelevant if they were mistaken in that belief. *Fuentes*, 32 F.3d at 765; *see also Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995) ("We do not sit as a super-personnel department that reexamines an entity's business decisions. . . . no matter how mistaken the firm's managers, the ADEA does not interfere.") (citation omitted). Even if Shawley and Pevornik had misinterpreted the reasons for Abels' leaving, that does not provide evidence that the true motivation behind their decision was age-based discrimination. Nor does it change the fact that they correctly determined Abels had left without permission, which was one of the bases for their decision.

10

### 3.  Abels does not discredit the other factors that went into DISH's decision

Aside from Abels' unsanctioned departure from the premises, DISH cites two other factors it considered in deciding to treat Abels' conduct as a voluntary resignation: his hostile demeanor at work, and the numerous complaints Shawley had received from other employees about him.  Abels did not provide sufficient evidence to discredit these considerations.  He attempted to challenge Shawley's allegation of coworker complaints by noting that Shawley did not record any of these complaints.  However, Abels concedes Shawley called a meeting with him sometime prior to February 26, 2009 to discuss these complaints, which indicates they are not a "*post hoc* fabrication . . . that is, . . . a pretext." *Fuentes*, 32 F.3d at 764.  Similarly, Abels has not offered any evidence to discredit Shawley's determinations, based on her own interactions with Abels, that he had a hostile and belligerent attitude in the workplace.  Though Abels need not "cast doubt on each proffered reason in a vacuum," he has not "manage[d] to cast substantial doubt on a fair number of them," such that "a factfinder may rationally disbelieve the remaining proffered reasons." *Id.* at 764, n.7.

Abels has established, at most, a dispute as to a non-material fact: whether he told his supervisors he was sick.  The only material fact regarding his leaving work early is whether he received permission to do so, and it is undisputed he did not.  Abels failed to provide any evidence that DISH's interpretation of his conduct was based on age discrimination, and he similarly failed to rebut or discredit the other factors that went into DISH's decision to terminate him.  Looking at the record in the light most favorable to Abels, he did not satisfy his burden to establish that DISH's legitimate nondiscriminatory

11

reasons for discharge were pretextual and that age was a "but for" cause of the adverse employment action.

## III.

For the foregoing reasons, we will affirm the District Court's order granting DISH's motion for summary judgment.