NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1146
_____

ANTONIA UDASCO-KIST,
Appellant

v.

THOMAS JEFFERSON UNIVERSITY HOSPITAL, INC.
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:19-cv-03176)
U.S. District Judge: Honorable Nitza I. Quinones Alejandro
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 5, 2022
_____

Before: SHWARTZ, KRAUSE, and ROTH, Circuit Judges.

(Filed: July 18, 2022)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Antonia Udasco-Kist appeals the District Court's order granting summary judgment to her former employer, Thomas Jefferson University Hospital, Inc., on her age discrimination claims. Because the District Court correctly held that Udasco-Kist failed to show a reasonable jury would find that the Hospital's proffered reason for her termination was pretextual, we will affirm.

I

A

Udasco-Kist began working at the Hospital's Methodist campus as a nuclear medicine technologist ("NMT") when she was in her mid-forties. As an NMT, Udasco-Kist assisted radiologists, provided patients with radiopharmaceuticals, and performed tests using nuclear medicine equipment. Initially, she received positive performance reviews.

After about a decade, Udasco-Kist's performance slipped. First, in January 2013, she injected a patient with the wrong radiopharmaceutical.[1] A supervisor had a "Documented Discussion" with her about the error.[2] A919. Second, in January 2015,

---

[1] During 2013, she also mislabeled images, improperly dosed patients, and admitted to having trouble concentrating but could not remember why. She received counselling following these errors.

[2] The Hospital's progressive disciplinary policy generally consisted of four steps: (1) a "First Written Warning" or "Documented Discussion," which was typically an informal notice to an employee of unsatisfactory conduct; (2) a "Second Written Warning," which was a formal notice to an employee of unsatisfactory conduct; (3) a

she "drew up the wrong radiopharmaceutical for a patient," and received a "First Written Warning." A921-22.

In the summer of 2015, the Hospital's Methodist and Center City campuses merged, NMTs began cross-training at both locations, and Cheryl Rickley became Udasco-Kist's supervisor. Udasco-Kist voiced concerns about Center City's fast-paced environment, patient volume, and different machines and struggled to keep up. A co-worker, Anthony Juliani, told Udasco-Kist that Rickley said to another co-worker, Tirath Nahar, that Rickley "wished that [Udasco-Kist] would just retire."[3] A734-35.

In November 2015, Udasco-Kist provided a patient with a radiopharmaceutical even though the order directing the dosage was cancelled and department policy required her to "review" and "verify" all orders before dosing a patient. A927, 931. As a result, she received a "Final Warning," which stated that she would be "terminat[ed]" if "an incident occurs again." A924-25.

In January 2016, another incident occurred. Center City used a machine to detect radioactive particles. NMTs were responsible for calibrating the machine. Udasco-Kist

---

"Final Warning," which was "intended to provide the employee a clear and definitive understanding that the next violation w[ould] result in termination of employment"; and (4) "Discharge," which terminated the employment relationship based on "the seriousness of the offense, overall record of service, and the number of warnings." A1047-48. That said, "progressive disciplinary steps [could] be skipped in instances of serious violations . . . or . . . repeated violations." A1049. Further, "[s]ome violations . . . result[ed] in immediate termination," such as "providing false . . . information of any nature." A1049-50.

[3] Nahar denies hearing such a statement from Rickley.

admits that she engaged in a "pattern" of inputting incorrect data into the machine so that it would accept the values she input and appear properly calibrated. A423. She believed that "since the number[s] w[ere] so close [to the correct values,] . . . it would not impose a dangerous situation." A423-24. Udasco-Kist admits, however, that she knew this was "not what [she] w[as] supposed to do." A428. Eventually, the machine stopped working and her supervisors discovered her conduct. She was terminated (at the age of sixty) for engaging in this misconduct and replaced by an equally qualified NMT in her twenties.[4]

## B

Udasco-Kist asserts she was fired because of her age and sued the Hospital for age discrimination under the (1) Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and (2) Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 955 et seq.

After discovery, the Hospital moved for summary judgment, which the District Court granted because it found Udasco-Kist failed to "produce[] evidence from which a reasonable factfinder could find that [the Hospital]'s articulated legitimate, non-discriminatory reason for her termination was a pretext for age discrimination." Udasco-

---

[4] Two other NMTs were disciplined for calibration misconduct: (1) Christopher Dihn similarly "rounded [] up" numbers, A689, and received a "[F]inal [W]arning" for the conduct even though it was his first disciplinary infraction, A692; and (2) Mai Nguyen entered correct numbers into the machine, but then manually overrode the system so that it would accept the values, and received a written warning for her conduct, which supervisors deemed less serious than Udasco-Kist's and Dihn's conduct because Nguyen did not enter false numbers into the machine.

Kist v. Thomas Jefferson Univ. Hosps., Inc., No. 19-cv-03176, 2021 WL 254584, at *4

(E.D. Pa. Jan. 25, 2021).

Udasco-Kist appeals.

## II[5]

The only issue on appeal is whether Udasco-Kist adduced sufficient evidence,

when viewed in her favor, to show that the Hospital's proffered legitimate, non-

discriminatory justification for termination was pretextual.[6] To show pretext, a plaintiff

---

[5] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291.

We review a district court's order granting summary judgment de novo, applying the same test as the district court under Federal Rule of Civil Procedure 56(c). Kautz v. Met-Pro Corp., 412 F.3d 463, 466 (3d Cir. 2005). Summary judgment is "proper only if it appears 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(c)). The "non-moving party[] is entitled to every favorable inference that can be drawn from the record." Id.

[6] The "same legal standard" applies to age discrimination claims brought under the ADEA and PHRA, and "it is proper to address them collectively." Kautz, 412 F.3d at 466 n.1. When a plaintiff like Udasco-Kist does not provide "direct evidence" of age discrimination, "our inquiry . . . is governed by the three-part [McDonnell Douglas burden shifting] framework." Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013) (citations omitted). Under this framework, "the plaintiff [first] bears the burden of making out a prima facie case of discrimination," that is: (1) the plaintiff is "forty years of age or older," (2) "the defendant took an adverse employment action against her," (3) "she was qualified for the position in question," and (4) "she was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." Burton, 707 F.3d at 426 (citing, inter alia, McDonnell Douglas, 411 U.S. at 802-03). Second, "[o]nce the plaintiff makes out her prima facie case, 'the burden of production [] shifts to the defendant to offer a legitimate non-discriminatory [justification] for the adverse employment action.'" Id. at 426 (quoting Smith v. City of Allentown, 589 F.3d 684, 690 (3d Cir. 2009)). The parties do not dispute that Udasco-Kist made out her prima facie case and that the Hospital offered a legitimate, non-

"'must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" Burton v. Teleflex Inc., 707 F.3d 417, 427 (3d Cir. 2013) (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

Udasco-Kist has not satisfied her burden. First, Udasco-Kist does not dispute her disciplinary record leading up to the incident that prompted her termination. She does not dispute that she received (1) a Documented Discussion for incorrectly injecting a patient in 2013; (2) a First Written Warning for drawing up the wrong radiopharmaceutical in January 2015; and (3) a Final Written Warning for wrongly dosing a patient in November 2015. After the November 2015 incident, the Hospital notified her that another infraction would result in termination.

Second, Udasco-Kist does not dispute that she committed another infraction in January 2016. She admits that she engaged in improper conduct by knowingly inputting incorrect numbers into the Hospital's machinery. Under the Hospital's progressive discipline policy, it could have terminated her based on (1) her "number of [prior] warnings," including a Final Written Warning, see A1047-48; and/or (2) the nature of the

_____

discriminatory reason for Udasco-Kist's termination. The issue here is whether Udasco-Kist sustained her burden to produce "evidence from which a factfinder could reasonably infer that the employer's proffered justification is [] a pretext for discrimination." Id. at 426.

6

violation, as she "provid[ed] false . . . information," which permits "immediate termination," A1049-50. Indeed, Udasco-Kist admits that she does not "believe that [the Hospital] violated any disciplinary policy . . . by terminating [her]" for her January 2016 conduct. A438. Thus, viewing these undisputed facts in her favor, no reasonable factfinder could disbelieve the Hospital's articulated legitimate non-discriminatory reason or believe that an invidious discriminatory reason was more likely than not the motivating factor for her termination.

Udasco-Kist points to several pieces of evidence in support of her position to the contrary but to no avail. Her prior positive performance reviews do not negate her misconduct because they predate her disciplinary infractions. See Kautz v. Met-Pro Corp., 412 F.3d 463, 474 (3d Cir. 2005) ("The attempt to use past positive performance reviews to show that more recent criticism was pretextual fails as a matter of law."). Moreover, Rickley's alleged comment to a co-worker that she wished Udasco-Kist would "just retire" is insufficient to show pretext because even if Rickley was the "decisionmaker" in Udasco-Kist's termination, Udasco-Kist has not identified when the comment was made or how the comment related to Rickley's decision to recommend termination. See Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992) ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision."). Instead, the record shows that Rickley recommended

terminating Udasco-Kist (as well as her co-worker, Dihn) for "falsif[ying] quality control data," which was a ground for "automatic termination" under the Hospital's disciplinary policy. A818; A1049-50.[7]

Therefore, the District Court appropriately granted summary judgment to the Hospital.

## III

For the foregoing reasons, we will affirm the District Court's order.

---

[7] The Hospital's decisions to not terminate Dihn and Nguyen despite seemingly similar misconduct also do not show pretext. Neither of them had a disciplinary record before their respective incidents. Dihn received a Final Warning for rounding up numbers like Udasco-Kist (skipping several disciplinary steps because of the severity of the misconduct), and Nguyen received a First Written Warning for manually overriding the system after she input correct numbers that were outside the acceptable range. In each instance, the Hospital applied its disciplinary policy based on the employees' past and present misconduct. See In re Trib. Media Co., 902 F.3d 384, 404 (3d Cir. 2018) (holding no evidence of pretext when an allegedly similarly situated employee "who participated in the same incident and was investigated at the same time by the same people . . . received the same treatment" under the employer's disciplinary policy (quotation omitted)).