**Bruce KLASTOW, Appellant**

v.

**NEWTOWN FRIENDS SCHOOL.**

No. 12–2931.

United States Court of Appeals,
Third Circuit.

Submitted Pursuant to Third Circuit
LAR 34.1(a) March 14, 2013.

Opinion filed: March 15, 2013.

Bruce Klastow, Doylestown, PA, pro se.

John E. Freund, III, Esq., King, Spry, Herman, Freund & Faul, Bethlehem, PA, for Defendant–Appellee.

Before: FUENTES, VANASKIE and VAN ANTWERPEN, Circuit Judges.

## OPINION

PER CURIAM.

Bruce Klastow, proceeding pro se, appeals from an order of the United States District Court for the Eastern District of Pennsylvania granting the Newtown Friends School's ("the School") motion for summary judgment. For the following reasons, we will affirm.

## I.

In 1979, the School hired Klastow, born in 1949, as a part-time physical education teacher. By the 2008–2009 school year, Klastow was working at the School as a full-time history and mathematics teacher pursuant to a year-to-year contract that was terminable at will. Klastow reported to Jody Smith, the head of the Upper School.

In June 2008, the School's business manager, Alice Gens, discovered that Klastow was using the School's credit card to purchase personal items. Klastow told Gens that he used the School's card because he did not have his personal credit card with him, and he understood not to use the School's card for personal items in the future. However, in September 2008, Gens spoke to Klastow again about additional personal charges that she did not expect to be on the billing statement.

Klastow reimbursed the School for the personal expenses; however, he was informed by Steven Nierenberg, the head of the School, that any additional personal use of the School's card would result in termination.

During his employment at the School, Klastow developed a personal relationship with Marion Smith, a fourth-grade teacher. Around August 2008, the School placed Smith in a professional development and assistance program called the Teacher Assistance Track ("TAT"). In March 2009, the School terminated Smith for the reasons she had been placed on the TAT.

Also in March 2009, Gens learned of a discrepancy in expenses and funds for the School's ski club, for which Klastow was a coordinator. As a coordinator, Klastow collected checks and cash from students and parents to fund trips and delivered the funds to the school's bookkeeper. Klastow brought Gens an envelope with checks, but the checks were insufficient to cover the club's expenses. After numerous requests from Gens, Klastow gave her an envelope of cash with students' names written on the outside of the envelope. However, the cash was insufficient to cover the club's costs. Nierenberg determined that Klastow would not handle the club's funds anymore.

On April 22, 2009, Klastow made a speech concerning both the leadership and changes occurring at the School at the School's Meeting for Worship.[1] A short time later, Klastow met with Jody Smith and Nierenberg to discuss the speech, and Nierenberg placed Klastow on paid leave for the remainder of the school year and rescinded his contract for the 2009–2010 school year.

---

1. A Meeting for Worship is a weekly gathering of Quakers and members of the community where individuals are encouraged to stand up and speak about issues the community faces.

Klastow filed his complaint pursuant to the Age Discrimination in Employment Act ("ADEA") of 1967, 29 U.S.C. § 623, on November 8, 2010, alleging discrimination and retaliation. On November 21, 2011, the School filed a motion for summary judgment, to which Klastow responded. On June 7, 2012, the District Court granted the School's motion for summary judgment. Klastow then timely filed this appeal.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and exercise plenary review over the District Court's order granting summary judgment. *See Giles v. Kearney,* 571 F.3d 318, 322 (3d Cir.2009). Summary judgment is appropriate only when the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "The moving party has the burden of demonstrating that there is no genuine issue as to any material fact, and summary judgment is to be entered if the evidence is such that a reasonable fact finder could find only for the moving party." *Watson v. Eastman Kodak Co.,* 235 F.3d 851, 854 (3d Cir.2000) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

## III.

On appeal, Klastow alleges that the District Court erred in granting summary judgment to the School because (1) his pleadings and evidence demonstrate the existence of genuine issues of material fact as to whether the School unlawfully discriminated against him; and (2) the District Court improperly favored the School's version of the facts while failing to view all facts and inferences in a light most favorable to him.

## IV.

### A. ADEA Retaliation Claim

Klastow's claim of retaliation is governed by the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Namely, he must demonstrate: (1) that he engaged in a protected activity; (2) that he was subject to adverse action by the employer either subsequent to or contemporaneous with the protected activity; and (3) that there was a causal connection between the protected activity and the adverse action. *Fasold v. Justice,* 409 F.3d 178, 188 (3d Cir.2005) (noting that in the absence of direct evidence of retaliation, retaliation claims under the ADEA ordinarily proceed under the *McDonnell Douglas* framework).

We agree with the District Court that Klastow has provided no evidence that he engaged in protected activity. Under the ADEA, an employee engages in protected activity by either opposing unlawful age discrimination or participating in proceedings relating to unlawful discrimination. 29 U.S.C. § 623(d). Under the opposition clause, Klastow must demonstrate that he "hold[s] an objectively reasonable belief, in good faith," that the activity he opposes is unlawful under the ADEA. *Moore v. City of Phila.,* 461 F.3d 331, 341 (3d Cir.2006) (interpreting Title VII's similar retaliation clause).

There is no evidence that Klastow specifically complained about age discrimination before he was terminated. First, although Klastow testified that he may have discussed his belief that the TAT was being used to target older teachers, the District Court correctly noted that even after considering the evidence in Klastow's favor, nothing in the record supports his

statement. Instead, the evidence indicates that Klastow was unhappy with the placement of certain teachers on the TAT. Second, Klastow alleges that he opposed age discrimination by attending "low morale" meetings; however, these meetings and any subsequent communication to administrators never concerned age discrimination.

Thirdly, Klastow asserts that he engaged in protected activity by writing a letter to Ann Reece, the clerk of the School Committee, but this letter not once mentioned age or any other type of discrimination. *See Barber v. CSX Distribution Servs.,* 68 F.3d 694, 701 (3d Cir.1995) (noting that a letter complaining of "unfair treatment in general," but not specifically complaining about age discrimination, was not protected activity for a prima facie ADEA retaliation case). Finally, although Klastow asserts that he spoke out against discrimination at the School's April 22, 2009 Meeting for Worship, his remarks concerning the School's leadership never once referred to unlawful age discrimination. Therefore, the District Court properly granted summary judgment to the School on Klastow's retaliation claim because of his failure to demonstrate that he engaged in activity protected under the ADEA.

## B. ADEA Discrimination Claim

Klastow's discrimination claim is also governed by the *McDonnell Douglas* burden-shifting framework. *Smith v. City of Allentown,* 589 F.3d 684, 689 (3d Cir.2009). If a plaintiff alleges unlawful termination because of age, "the prima facie case requires proof that (i) the plaintiff was a member of the protected class, i.e., was 40 years of age or older, (ii) that the plaintiff was discharged, (iii) that the plaintiff was qualified for the job, and (iv) that the plaintiff was replaced by a sufficiently

younger person to create an inference of job discrimination." *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1108 (3d Cir.1997) (en banc) (citations omitted). Once a plaintiff makes out a prima facie case, the burden shifts to the defendant "who must then offer evidence that is sufficient, if believed, to support a finding that it had a legitimate, nondiscriminatory reason for the discharge." *Id.*

If the defendant satisfies that burden, the plaintiff can only overcome summary judgment with evidence "that the employer's proffered rationale was a pretext for age discrimination." *Smith,* 589 F.3d at 690. To show pretext, a plaintiff must submit evidence that: (1) casts doubt on the legitimate reason proffered by the employer so that a factfinder could reasonably conclude that the reason was a fabrication; or (2) allow the factfinder to infer that discrimination was more likely than not a motivating or determinative cause for termination. *See Fuentes v. Perskie,* 32 F.3d 759, 762 (3d Cir.1994). "The non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." *Id.* (internal quotation marks and citations omitted).

▮ We agree with the District Court that, even assuming Klastow has sufficiently alleged a prima facie case of unlawful age discrimination, he has failed to show that the School's legitimate, nondiscriminatory reasons for terminating him were pretextual. In response to Klastow's allegations, the School proffered the following three reasons for his termination: (1) his misuse of his employee credit card during the summer of 2008; (2) his mis-

handling of funds for a school ski trip in March 2009; and (3) his comments during the April 22, 2009 Meeting for Worship. The School therefore articulated legitimate, nondiscriminatory reasons for Klastow's termination. *See Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir.2006) (noting that the employer's burden of production at this stage is "relatively light, and the employer need only introduce evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision" (internal citations omitted)).

Klastow first alleges that the first reason given by the School, his improper use of the School's credit card, is pretextual because of Alice Gens' "shifting accounts" of what occurred with regards to his use of the card. Gens testified before the Pennsylvania Unemployment Compensation Board ("the Board") that Klastow had called the School over the summer to let the bookkeeper know that he had used the School's credit card to pay for an emergency car rental and that Klastow later paid for that charge by check. During her deposition, Gens testified that she was unable to contact Klastow over the summer when additional charges beyond those he had advised her of appeared in the July and August billing statements. However, we agree that Gens' testimony was not contradictory, as she was only asked about Klastow's rental car charge during the Board hearing and was not asked about the additional charges for gas and a restaurant. At both times, Gens established that Klastow had repeatedly misused the School's credit card for personal charges; accordingly, Klastow has not demonstrated that this reason for his termination is pretextual.

Klastow next alleges that the second reason, his mishandling of the funds relating to ski trips, is pretextual because Gens changed her testimony "considerably" during her deposition. During the Board hearing, Gens testified that when Klastow eventually gave her the cash, it appeared that what she had been given was sufficient to cover costs, but that it was difficult to tell because of insufficient record-keeping. At her deposition, Gens testified that Klastow brought her an envelope with checks, but the checks were insufficient to cover expenses. Gens requested that Klastow provide her with a list of students from whom he had collected money. Klastow eventually gave her an envelope of cash on which a "fairly illegible" list of students' names and amounts paid had been written. However, the amount of cash and checks was still insufficient to cover expenses. Again, we agree with the District Court that Gens' testimony is not contradictory because her statement that "it appeared" that Klastow had given her sufficient funds was not a definitive answer. Accordingly, the District Court properly determined that Klastow did not demonstrate that this reason for his termination was pretextual.

Thirdly, the School terminated Klastow because of the speech he gave at the April 22, 2009 Meeting for Worship. Klastow asserts that this reason is pretextual because he successfully taught for three weeks following the incident before the School terminated his employment. However, during that time, several faculty members signed a letter expressing a belief that Klastow's speech showed disrespect for Nierenberg and a lack of respect for students and staff. Overall, the record demonstrates that Klastow was ultimately terminated because of his past conduct outside of the classroom, and the fact that he successfully taught for three weeks after the Meeting does not support a finding

that the School's third reason for termination was implausible.[2]

Finally, Klastow attempts to discredit the School's reasons through direct and circumstantial evidence that he believes demonstrates that the School unlawfully discriminated against him because of age. First, while he asserts that the school used the TAT to unlawfully terminate older teachers like Marion Smith, he acknowledges that he was not on the TAT at the time of his termination, and we agree that such speculation that he would be the next "victim" is insufficient to show that the School's reasons given for termination were pretextual. Second, Klastow alleges that Nierenberg confirmed that the School engaged in unlawful age discrimination when he testified that he looked for "energetic dynamic go-getter[s] and individuals who would engage students rather than just stand up and lecture to them" when making hiring decisions. According to Klastow, these statements are "loaded and coded terms" for age discrimination. We cannot agree, as a reasonable inference that the School engaged in age discrimination when making hiring decisions cannot be made from these statements. Finally, nothing in the letter Klastow received from Jody Smith denying his request for a stipend to attend a technology seminar can reasonably be construed as relating to age and age discrimination; after all, Smith encouraged Klastow to submit an amended proposal relating to a specific topic that he taught. Accordingly, the District Court correctly determined that this evidence does not overcome the legitimate reasons given by the School for Klastow's termination.[3]

## V.

Overall, Klastow believes that the District Court disregarded evidence and failed to construe the record in his favor by ignoring his conflicting testimony. However, as discussed above, the District Court did view the record in Klastow's favor and properly determined that no evidence could reasonably be interpreted to demonstrate that the School engaged in unlawful age discrimination or retaliation when it terminated his employment. For the foregoing reasons, we will affirm the District Court's order granting the School's motion for summary judgment.

---

2. With regards to the School's first two reasons for termination, Klastow also argued that his one-year teaching contract was renewed for 2009–2010 even after these incidents. However, these incidents, combined with Klastow's speech at the April 22, 2009 Meeting for Worship, created a history of conduct supporting Klastow's termination. Accordingly, the fact that he was offered a new contract after his misuse of the School's credit card and his mishandling of the ski club's funds does not discredit the School's reasons for termination.

3. Klastow also points to an annual report written by Dana Harrison, Nierenberg's successor, about one year after his termination, in which Harris stated that the School has brought "youthful ... professionals to reach and teach our students." We agree with the District Court that this report is not relevant because it was given one year after Klastow's termination. Furthermore, although the report references "youthful" professionals, it does not reasonably support an inference that Klastow was terminated because of unlawful age discrimination when considered together with the entire record.