NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 17-1256

———————————

BRUCE GAVURNIK,
                                        Appellant,
v.

HOME PROPERTIES, L.P.;
LIGHTHOUSE MANAGEMENT SERVICES, LLC;
LSREF4 LIGHTHOUSE CORPORATE ACQUISITIONS, LLC

———————————

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(E.D. Pa. No. 2-16-cv-00633)
District Judge: Honorable Berle M. Schiller

———————————

Submitted Under Third Circuit LAR 34.1(a)
September 28, 2017

Before:  AMBRO, KRAUSE, *Circuit Judges*,
and CONTI,[*] *Chief District Judge*

(Opinion filed: October 25, 2017)
———————

OPINION[**]
———————

CONTI, *Chief District Judge*

_____

[*]  Honorable Joy Flowers Conti, Chief Judge of the United States District Court for the Western District of Pennsylvania, sitting by designation.

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Appellant Bruce Gavurnik ("Gavurnik") appeals an Order of the United States District Court for the Eastern District of Pennsylvania granting summary judgment on all his employment discrimination claims[1] in favor of Appellees Home Properties, L.P. ("Home Properties"), Lighthouse Management Services, LLC ("Lighthouse") and LSREF4 Lighthouse Corporate Acquisitions, LLC (collectively with Home Properties and Lighthouse, "Employer"). We will affirm.

## I.

Gavurnik was fifty-nine years old when he was hired in 2013 as a service technician at the Racquet Club Apartments ("RCA"), which was managed by Home Properties.[2] Gavurnik during his employment had a variety of "foot problems." (A46 ¶ 27; A281 ¶ 27.) Home Properties terminated Gavurnik's employment on September 2, 2014.

Gavurnik's job description provided that a service technician was responsible for "extensive snow removal," the job required "overtime as needed," and he had to be available "to respond to after hours and weekend emergency calls." (A136-37.) Gavurnik acknowledged that it was essential that snow be removed and that it presented a safety issue. Snow removal took priority over apartment repairs and making apartments ready for

---

[1] Gavurnik asserted claims under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 ("ADEA"), the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 ("ADA"), and the Pennsylvania Human Relations Act, 43 Pa. Stat. and Cons. Stat. Ann. §§ 951-963 ("PHRA"). We interpret the PHRA in accord with the ADEA and ADA where, like here, there is nothing in the PHRA's language requiring that we treat it differently. Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002).

[2] Because we write for the benefit of parties only, the factual background will be limited to matters necessary for the disposition of the appeal.

new tenants. During the winter of 2013-2014, the service technicians were required to work a lot of overtime because of many heavy snowfalls.

According to Gavurnik, in January 2014, he handed Wendy King ("King"), the Property Manager at the RAC, a letter from his doctor, which provided that Gavurnik "was recommended that he work only his work shift in order to avoid prolonged exposure of cold to his feet." (A200.) Home Properties determined that overtime, "especially in the context of removing snow[,]" was an essential function of a service technician, and, therefore, it could not accommodate Gavurnik's request to be relieved of working overtime in the cold. (A268.)

On April 8, 2014, Steve Martin ("Martin"), the Service Manager or maintenance supervisor for the RCA, issued an Employee Conversation Note ("Conversation Note")[3] to Gavurnik based upon his failure to follow a directive to schedule a carpet cleaner. Gavurnik thought Assistant Service Manager Gil Rivera ("Rivera"), who was forty-five years old at the time Gavurnik was fired, called the cleaners. Gavurnik testified that it was not his responsibility to call the cleaners and it was possible, but highly doubtful, that he was asked to do so.

In or around June 2014, Gavurnik complained to Rob DeLong ("DeLong"), a Regional Property Manager at Home Properties, about snow blowers not properly working. Service technicians had shoveled snow up to sixteen hours per day because the snow

---

[3] Home Properties used Conversation Notes to "document conversations, meetings, compliments, or concerns related to job performance." (A232.)

blowers were not working. If the snow blowers were working, it "[p]robably" would take half the time to shovel the snow. (A394-95.)

On August 8, 2014, Gavurnik was issued a Conversation Note after a resident complained that a service technician left a dirty rag, ice cube tray, and rack in her sink and did not leave a note about services performed at the apartment. Gavurnik in a closed work order reported the services performed at the apartment. He admitted that he may have left the items in the sink, did not recall leaving a note, and believed it was Rivera's responsibility to leave the note.

The same day, a resident in apartment M-23 reported a leak in the dining room and that the carpet was wet. Gavurnik responded to the complaint and discovered the leak was coming from an adjacent apartment, i.e., apartment M-21. Gavurnik and George Livingood ("Livingood"), a service technician who was forty-six years old at the time Gavurnik was fired, fixed the problem in apartment M-21. Gavurnik did not repair the wet carpet in apartment M-23. According to him, Livingood or he may have received a service ticket for apartment M-23. Gavurnik believed Livingood was supposed to follow up with apartment M-23 because Gavurnik was going on vacation. Livingood did not receive a service ticket for apartment M-23. On August 25, 2014, the resident in apartment M-23 reported that there was water in the dining room on the floor. Livingood did not receive a Conversation Note and was not disciplined for the wet carpet in M-23.

On August 17, 2014, leasing consultant Lynn Sannelli ("Sannelli") received a call from a resident who was upset because his dryer was not working. Sannelli contacted Gavurnik because he was the service technician on call. Gavurnik went to the apartment

4

fifteen minutes after receiving Sannelli's telephone call. Sannelli told Martin and King that Gavurnik argued with her and at first refused to respond to the call. Gavurnik received a written warning dated August 20, 2014, about the events of August 17, 2014.

On or about August 29, 2014, King and Kassandra Reed ("Reed"), Home Properties' Manager of Employee Relations and Recruitment, discussed how to handle Gavurnik's performance issues. Reed reviewed Gavurnik's discipline history and prior Conversation Notes. On September 2, 2014, Reed sent an email to King advising her that they could fire Gavurnik for "poor performance." (A258.) Martin and Rivera met with Gavurnik to fire him. King testified that she was not involved in the decision to fire employees, and Martin could not recall in the last five years whether he fired a service technician or recommended that a service technician be fired.

Gavurnik testified that other service technicians, e.g., Livingood, received favorable treatment because they were "friendlier with [Martin]," (A121) and Martin showed favoritism to Rivera because they "had a history together" (A122-23.) Gavurnik did not "hang out with the guys" or receive favoritism from King or Martin. (A122.)

II.[4]

Gavurnik appealed the District Court's order granting summary judgment in favor of the Employer on all his claims, i.e., his claims for retaliation and disparate treatment

---

[4] The District Court had jurisdiction over this case pursuant to 28 U.S.C. § 1331. We have jurisdiction over this case pursuant to 28 U.S.C. § 1291. We employ a plenary review over a District Court's grant of summary judgment. Santini v. Fuentes, 795 F.3d 410, 416 (3d Cir. 2015). Summary judgment is appropriate if the record shows there is no genuine dispute with respect to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a).

5

under the ADA, ADEA, and PHRA, and his claims for failure to accommodate and engage in the interactive process under the ADA and PHRA. Gavurnik raised six issues on appeal. To the extent errors were made by the District Court, they were harmless because Gavurnik failed to adduce sufficient evidence of pretext or that he could have been reasonably accommodated.

## A. Gavurnik Failed to Show Pretext

We apply the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to ADA and ADEA claims for disparate treatment and retaliation where there is no direct evidence of discrimination.[5] Gavurnik must first establish a prima facie case. Smith v. City of Allentown, 589 F.3d 684, 691 (3d Cir. 2009). The burden of production then shifts to Home Properties to articulate a legitimate, nondiscriminatory reason for its adverse employment decision. Id. The burden shifts back to Gavurnik to prove that reason was a pretext for discrimination. Id. A plaintiff may prove pretext by producing evidence that:

> 1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination [or retaliation] was more likely than not a motivating or determinative cause of the adverse employment action.

Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994).

---

[5] Capps v. Modelez Global, LLC, 847 F.3d 144, 156 n.12 (3d Cir. 2017) (retaliation under the ADA); Fasold v. Justice, 409 F.3d 178, 188 (3d Cir. 2005) (retaliation under the ADEA); Walton v. Mental Health Ass'n of Se. Pa., 168 F.3d 661, 667-68 (3d Cir. 1999) (disparate treatment under the ADA); Keller v. Orix Credit All., Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) (disparate treatment under the ADEA).

6

Here, even assuming that Gavurnik could establish a prima facie case,[6] he did not produce evidence sufficient for a reasonable jury to find Home Properties' reason for his discharge, i.e., poor performance based upon the four documented performance-related issues, was a pretext for discrimination or retaliation.

## 1. **Evidence Casting Doubt on the Legitimate, Nondiscriminatory Reason**

Gavurnik "cannot simply show that the employer's decision was wrong or mistaken." Id. at 765. He must show that he was fired based upon his age, disability, or protected activity by "demonstrat[ing] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Home Properties' reasoning that a reasonable jury could find it "'unworthy of credence.'" Id. (quoting Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1992)). "[H]e must show…that the employer's proffered reason…was so plainly wrong that it cannot have been the employer's real reason." Keller v. Orix Credit All., 130 F.3d 1101, 1109 (3d Cir. 1997). The District Court correctly held that Gavurnik failed to satisfy this burden.

Gavurnik was issued a Conversation Note dated April 8, 2014, because Martin concluded he did not follow instructions to schedule a carpet cleaner and prepare an apartment for a showing. Gavurnik argues that other service technicians did not receive a Conversation Note for the slow turnaround of apartments. Gavurnik, however, did not present evidence for a reasonable jury to find that Martin's reasoning was inconsistent, i.e.,

---

[6] The parties do not dispute the Employer satisfied its burden of production to show that Home Properties had a legitimate, nondiscriminatory reason for firing him.

7

that Martin failed to issue a similarly situated service technician a Conversation Note for *failing to follow instructions*, which led to the slow turnaround of an apartment.

With respect to the Conversation Note dated August 8, 2014, Martin determined that Gavurnik failed to remove the items from the sink and leave a note about the services performed in the apartment. Gavurnik did not present any evidence to dispute that: (a) he was responsible at least in part for the apartment; (b) he left the items in the sink; or (c) he failed to leave a note about the services performed.[7] Martin's determination was, therefore, not so plainly wrong that it is unworthy of credence.

Gavurnik argues that the written warning dated August 20, 2014, lacks credibility, but he does not deny that Sannelli told Martin and King that he (Gavurnik) argued with her and initially refused to respond to the call. The evidence, therefore, is insufficient for a reasonable jury to find that this incident is a cover-up for discrimination.

Gavurnik argues that the Resident Complaint dated August 25, 2014, could not serve as a legitimate basis for his firing because he was not responsible for apartment M-23. Yet he does not dispute that he responded to the Resident Complaint dated August 8, 2014, and he did not adduce evidence sufficient for a reasonable jury to find that King and Martin knew he was going on vacation and Livingood was to clean the carpet. Even if Gavurnik is correct that the Resident Complaints dated August 8, 2014 and August 25,

---

[7] Gavurnik attacks Martin's credibility on the basis that Martin testified that he took a picture of the items left in the sink and showed it to King, but King testified that she never saw the picture. Gavurnik does not deny that he left those items in the sink or failed to leave a report. The inconsistency between Martin's and King's testimonies, therefore, is not a sufficient basis upon which a reasonable jury could find pretext.

2014, were unrelated, the evidence is insufficient for a reasonable jury to find that King and Martin's understanding of those events was so plainly wrong that it was a pretext for discrimination.[8]

## 2. Evidence From Which to Infer that Discrimination was More Likely than not a Motivating or Determinative Cause of the Adverse Employment Action

Evidence that an employee similarly situated to the plaintiff, i.e., his or her comparator, received more favorable treatment may be evidence of pretext. Fuentes, 32 F.3d at 765. Gavurnik argues Rivera and Livingood are his comparators.[9] The undisputed evidence shows, however, that Rivera and Livingood were not similarly situated to Gavurnik.

Gavurnik and Rivera, a supervisor, held different positions, and Martin instructed Gavurnik—and not Rivera—to call the carpet cleaner in April 2014. While Gavurnik and Livingood were both service technicians who reported to Martin, they did not engage in

---

[8] Gavurnik argues that Reed, King, and Martin denied making the decision to terminate his employment, which is sufficient evidence for a reasonable jury to infer pretext. Gavurnik in support of this argument cites Sabbrese v. Lowe's Home Centers, Inc., 320 F.Supp.2d 311, 326 (W.D. Pa. 2004), and Roehrig v. W.G. Tomko, Inc., Civ. Action No. 15-146, 2016 WL 2755177, at *3 (W.D. Pa. May 12, 2016). In each decision, the district court concluded that the employer's failure to identify who made the decision to terminate the plaintiff was one piece of evidence, *among others*, that supported the finding of pretext. Here, because Gavurnik did not dispute the factual bases of the events in issue, the evidence that King, Martin, and Reed denied making the decision to fire him cannot *standing alone* be sufficient for a reasonable jury to render a verdict in his favor.

[9] A comparator may be a member of the protected class. Barber v. CSX Distrib. Servs., 68 F.3d 694, 699 (3d Cir. 1995). The relevant inquiry is whether the comparator is "sufficiently younger" than the plaintiff to permit an inference of age discrimination. Id. The fifteen-year age gap between Gavurnik and Rivera and fourteen-year age gap between Gavurnik and Livingood are sufficient to show that they were sufficiently younger than Gavurnik. Id. at 699.

sufficiently similar conduct to support an inference of age discrimination. Gavurnik responded to the Resident Complaint dated August 8, 2014, and there is no evidence that King and Martin were aware of any reason to believe that Livingood was responsible for cleaning the carpet in apartment M-23. Home Properties' treatment of Rivera or Livingood, therefore, does not support a finding of pretext in this case.[10]

## B. **Gavurnik Failed to Show a Reasonable Accommodation was Possible**

To establish a prima facie case under the ADA for failure to accommodate or engage in the interactive process, a plaintiff must show, among other things, that he or she "could have been reasonably accommodated." Capps, 847 F.3d at 157; Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 772 (3d Cir. 2004). Here, Gavurnik did not present evidence sufficient for a reasonable jury to find that a reasonable accommodation was possible.

Gavurnik argues he requested a reasonable accommodation when he provided King with the letter from his doctor advising that he be excused from working overtime in the cold. Under the ADA, overtime may be considered an essential function of a job. Tjernagel v. Gates Corp., 533 F.3d 666, 673 (8th Cir. 2008); Davis v. Fla. Pwr. & Light Co., 205 F.3d 1301, 1306 (11th Cir. 2000). An employer is not required to modify or eliminate an

---

[10] Even if Rivera and Livingood were proper comparators, Gavurnik testified that King and Martin showed favoritism to Rivera and Livingood because they were friends. Employment decisions based upon friendship do not constitute discrimination. Platner v. Cash & Thomas Contractors, Inc., 908 F.2d 902, 905 (11th Cir. 1990); Benzies v. Illinois Dep't of Mental Health and Developmental Disabilities, 810 F.2d 146, 148 (7th Cir. 1987).

10

essential function of a job to accommodate its disabled employee. <u>Walton v. Mental Health Ass'n. of Se. Pa.</u>, 168 F.3d 661, 671 (3d Cir. 1999).

Here, the undisputed evidence shows that working overtime was a "fundamental" duty of a service technician and not a "marginal function[]…of the position." 29 C.F.R. § 1630.2(n). King considered overtime, especially with respect to snow removal, an essential function of a service technician. The job description provided that overtime was required and the employee "[m]ust be physically able to perform extensive snow removal." (A136.) Snow presented a safety issue, and snow removal was prioritized over other functions of the job. Based upon the foregoing, overtime was an essential function of a service technician, and, therefore, Gavurnik's request to be excused from working overtime was not a request for a reasonable accommodation.

Gavurnik also did not adduce evidence sufficient for a reasonable jury to find that fixing the snow blowers would have reasonably accommodated him. The undisputed evidence shows that the use of properly functioning snow blowers would cut in half the time it took to remove snow, and there were times—even with properly functioning snow blowers—that the service technicians would have been exposed to the cold for eight hours. There is no evidence about how long Gavurnik could be exposed to the cold, i.e., whether he could be exposed to the cold for at least eight hours. A reasonable jury, therefore, could not determine whether a reasonable accommodation was possible.

IV.

For the foregoing reasons, we will affirm the Order of the District Court granting the Employer's motion for summary judgment.

11