**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1399
_____

PATRICK MCGLONE, SR.,
                                        Appellant

v.

PHILADELPHIA GAS WORKS, PGW;
UTILITY WORKERS UNION OF AMERICA LOCAL 686

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-15-cv-03262)
District Judge: Honorable Michael M. Baylson
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 23, 2018
_____

Before:  HARDIMAN, VANASKIE, and SHWARTZ, *Circuit Judges*

(Filed: May 14, 2018)
_____

OPINION[*]
_____

_____

    [*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

VANASKIE, *Circuit Judge.*

Appellant Patrick McGlone, Sr., appeals the District Court's grant of summary judgment in favor of Appellee Philadelphia Gas Works ("PGW"). McGlone contends that PGW, his long-time employer, subjected him to various forms of disability discrimination when he returned to work after an on-the-job injury. Because McGlone failed to demonstrate a genuine dispute of material fact with regard to any of his claims, and those claims lack legal merit, we will affirm the District Court's judgment.

I.

PGW is a local gas distribution company providing natural gas services. McGlone was formerly employed as a Service Specialist in PGW's Field Services Department ("FSD"). In his position, McGlone performed services and repairs on appliances and trained others on how to do the same.

On January 19, 2012, McGlone injured his left knee while servicing a customer's heater. McGlone returned to work in May 2012 after his treating physician, Dr. Francine Katz, cleared him to do so. Dr. Katz imposed the following restrictions on McGlone's return to work: no climbing; kneeling; crawling; squatting or crouching; working from unprotected heights; driving clutch vehicles; or using his left lower leg for foot controls, repetitive movements, or balance.

When McGlone returned to PGW, there was no light duty work available in FSD. As a result, McGlone was assigned to light duty work in PGW's Transportation Department ("Fleet"). Light duty included, *inter alia*, sweeping the premises, filing paperwork, and driving automatic vehicles. Eventually, McGlone requested that he be

2

permitted to return to FSD because he was "bored and unchallenged" in Fleet. (SA 89.) PGW's Medical Director determined that the transfer would be consistent with McGlone's medical restrictions, and the transfer was permitted. Upon his return to FSD, McGlone was instructed to only perform training "so long as he abided by his medical restrictions." (JA at 240.)

On June 6, 2012, McGlone saw Dr. Katz and told her that, although he was still experiencing pain, "if he [wore] his brace he [was] good." (SA at 97.) McGlone also reported that he was "tolerating work," "doing his job," and "doing training but . . . just not getting down on his knees as much as he used to." (*Id.*) Accordingly, Dr. Katz modified McGlone's restrictions and indicated he was no longer restricted from climbing stairs, or driving clutch vehicles, and indicated he could engage in light use of his left leg for foot controls, repetitive movements, and balance.

On July 3, 2012, McGlone transferred his medical care from Dr. Katz to Dr. Gerald E. Dworkin, a pain management specialist. McGlone was already seeing Dr. Dworkin for a back injury he had sustained separate and apart from his knee injury. On July 12, 2012, Dr. Dworkin amended McGlone's restrictions to indicate that he could "[c]ontinue limited lifting > 15 lb," but could not bend his knee. (*Id.* at 102.) On August 9, 2012, after an appointment with McGlone, Dr. Dworkin noted that McGlone should be on light duty, with "no kneeling, bending, crawling . . . [or] lifting > 10 lbs" through December 1, 2012. (*Id.* at 103.)

On September 11, 2012, McGlone had a verbal altercation with one of his co-workers, Jeffrey Shapiro. After the altercation, Shapiro submitted a memorandum to the

superintendent of FSD accusing McGlone of making threats. The following morning, PGW attempted to interview McGlone about the reported incident to determine if it constituted a violation of PGW's Workplace Violence/Threats Policy. McGlone declined to participate in an interview, choosing to retire instead. According to McGlone, if the investigation had gone forward and he were found to have violated the policy, he would have been at risk of having his employment terminated and losing the lifetime benefits he and his family were due to receive from PGW upon his retirement.

Following his retirement, McGlone filed this employment discrimination lawsuit against PGW, alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*, and Pennsylvania common law concerning constructive discharge.[1] PGW moved for summary judgment. McGlone opposed. The District Court granted the motion in favor of PGW, concluding that McGlone failed to establish a *prima facie* case for any of his claims. This timely appeal followed.

II.

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over a district court's grant of summary judgment. *Andrew M. v. Del. Cty. Office of Mental Health and Mental Retardation*, 490 F.3d 337, 344 (3d Cir. 2007).

---

[1] McGlone initially filed this lawsuit against PGW and the Utility Workers Union of America, AFL/CIO Local 686. McGlone dismissed the Union from the action in January of 2016.

4

III.

We will begin with McGlone's claims of discrimination in violation of the ADA and PHRA. McGlone claims three distinct forms of discrimination: (1) that his light duty assignments were demotions; (2) that he was not reasonably accommodated; and (3) that he was subjected to a hostile work environment. Then, we will turn to McGlone's claim of retaliation in violation of the PHRA, before concluding with McGlone's constructive discharge claim.

A.

In order to make out a *prima facie* case of disability discrimination under the ADA, a plaintiff must demonstrate that: (1) he is disabled within the meaning of the ADA; (2) he is "otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation[]"; and (3) he "has suffered an otherwise adverse employment action as a result of discrimination."[2] *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998).

McGlone argues that his light duty assignments were adverse employment actions because they were demotions. To the contrary, the record shows that PGW followed its normal processes when it assigned McGlone to temporary light duty, doing so only after determining accommodation within his former titled position was unavailable. Nothing

---

[2] Although claims under the PHRA and ADA differ in several respects, none of the differences are material to the issues we address on appeal. The following analysis thus applies with equal force to McGlone's claims under the PHRA, although throughout we will refer solely to the ADA for convenience. *See Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) (treating PHRA and ADA claims coextensively).

in the record suggests the temporary light duty assignments were demotions. The District Court's grant of summary judgment to PGW on this claim was proper.

B.

Next, McGlone argues that PGW failed to reasonably accommodate his disability. An employer's failure to reasonably accommodate an employee's disability may constitute discrimination. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999). McGlone primarily argues that his modified light duty assignments were not reasonable accommodations because they were "positions that inherently violated his medical restrictions." (Appellant's Br. at 4.) In particular, McGlone argues that the position in Fleet violated his medical conditions because it forced him to use the stairs and was not sedentary, while the position in FSD violated his medical conditions because it forced him to use the stairs, to bend, and was not sedentary.

There is a dearth of evidence suggesting that the light duty assignments forced McGlone to violate his restrictions, or that he ever complained to PGW about being forced to violate his restrictions. On the other hand, PGW submitted voluminous evidence indicating (1) that the light duty positions did not require McGlone to violate his medical restrictions; and (2) that McGlone did not complain to PGW about any alleged violations. For instance, PGW offered numerous affidavits from other PGW employees indicating that McGlone was specifically instructed not to bend or perform any job duties that fell outside of his medical restrictions when he was re-assigned to FSD. McGlone does not dispute the assertions in these affidavits.

6

The assertions in McGlone's wife's declaration are insufficient to raise a genuine dispute of material fact. The statements made by McGlone to Mrs. McGlone regarding whether he complained about his light duty assignments to various individuals at PGW do not fall under any exception to the rule against hearsay, and are inadmissible. *See* Fed. R. Evid. 801(c); *see also Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009) ("Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment."). Thus, assuming, *arguendo*, that the light duty assignments forced McGlone to violate his medical restrictions, no reasonable juror could find that McGlone notified PGW that he was in need of further accommodation.

Additionally, there is no evidence in the record to suggest that McGlone requested or otherwise supplied PGW with medical documentation that he required a sedentary position. Thus, no reasonable juror could find that PGW's failure to provide a sedentary position amounted to a failure to provide a reasonable accommodation.

McGlone also contends that PGW failed to reasonably accommodate him to the extent PGW failed to engage in the good faith interactive process. An employee can demonstrate that an employer breached its duty to engage in the good faith interactive process by showing that:

> 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

*Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 772 (3d Cir. 2004) (quoting

*Taylor*, 184 F.3d at 319–20).  An employer's obligation to engage in the interactive

process is triggered when "the employer can be fairly said to know of both the disability

and desire for an accommodation."  *Taylor*, 184 F.3d at 313.

We agree with the District Court that McGlone's failure to show that he

complained of any of his light duty assignments was fatal to his claims.  There was also

unrefuted record evidence presented by PGW indicating it had no knowledge of

McGlone's dissatisfaction with his light duty assignments.[3]

Next, McGlone argues that PGW failed to engage in the interactive process when

he requested to be transferred to FSD because he was "bored and unchallenged" in Fleet.

(SA 89.)  This argument is meritless.  The record suggests that, rather than being ignored

by PGW, McGlone's complaint was acknowledged, and his request was granted.

Notably, McGlone was transferred to FSD, but only after PGW consulted with its

Medical Director and determined the transfer would be consistent with McGlone's work

restrictions.

Lastly, McGlone argues that PGW failed to engage in the interactive process

when it failed to find him a sedentary position.  However, as we noted earlier, nothing in

---

[3] McGlone's argument that PGW failed to engage in the interactive process because it failed to review his case at its monthly Employment Utilization Committee meetings is also unavailing.  Failing to review McGlone's case does not mean that PGW failed to engage in the interactive process.  There is no singular way to engage in the interactive process and, as the District Court noted, there was ample record evidence showing that PGW consulted with McGlone, his doctors, and its own Medical Director to find modified work that would be consistent with McGlone's work restrictions.

the record indicates that McGlone's doctors recommended restricting him to a sedentary position, or that McGlone requested such a position from PGW. Because PGW was not on notice that McGlone sought a sedentary position, it was not obligated to re-engage in the interactive process to accommodate him. *See Taylor*, 184 F.3d at 317 ("[A]n employer cannot be faulted if after conferring with the employee to find possible accommodations, the employee then fails to supply information that the employer needs . . . ."). The District Court's grant of summary judgment in favor of PGW on McGlone's reasonable accommodation claims was proper.

C.

To establish a hostile work environment claim under the ADA, a plaintiff must show that: (1) he is a qualified individual with a disability; (2) he was subjected to unwelcome harassment because of his disability or request for an accommodation; (3) the harassment was sufficiently severe or pervasive to alter the conditions of his employment; and (4) his employer knew or should have known of the harassment and failed to take prompt effective remedial action. *See Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999).

McGlone contends the following actions contributed to a hostile work environment: (1) his light duty assignments to the extent they were demotions and forced him to violate his medical restrictions; (2) name-calling by co-workers; and (3) the altercation with Shapiro, which resulted in an investigation. McGlone's first contention is unavailing. As discussed above, there is no evidence in the record that the light duty assignments were demotions, nor is there evidence that the assignments forced

9

him to violate his medical restrictions. With regard to name-calling, at best, the record evidence supports one specific incident of name-calling. However, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citation and quotation marks omitted). Thus, McGlone's reliance on one specific incident, accompanied by general allegations of name-calling, is insufficient to sustain a hostile work environment claim. And finally, nothing in the record supports an inference that either the altercation between Shapiro and McGlone or the resulting investigation related in any way to McGlone's disability and request for an accommodation. To the contrary, the record suggests the altercation was a personality conflict unrelated to McGlone's knee injury, and the investigation was consistent with PGW's workplace violence policy. The grant of summary judgment to PGW on this claim was proper.

## IV.

We now turn to McGlone's retaliation claim. To establish a *prima facie* case of retaliation under the PHRA, a plaintiff must show: (1) that he was engaged in protected activity; (2) that he suffered an adverse employment action after or contemporaneous with his protected activity; and (3) that there was a causal link between his protected activity and the adverse employment action. *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007) (citing *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567–68 (3d Cir. 2002)). "[O]ur case law has focused on two main factors in finding the causal link necessary for retaliation: timing and evidence of ongoing antagonism." *Abramson v.*

10

*William Paterson Coll. of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)); *see also Woodson v. Scott Paper Co.*, 109 F.3d 913, 920–21 (3d Cir. 1997).

McGlone argues that his light duty assignments, the fact that he was not assigned a sedentary position, and the investigation into the altercation with Shapiro, were retaliatory. As detailed above, however, there is no evidence in the record that McGlone's light duty assignments were demotions or that his non-sedentary light duty assignments violated his medical restrictions. Thus, neither may be considered an adverse employment action. With regard to the investigation, McGlone failed to raise a genuine dispute as to causation. The temporal proximity between McGlone's injury, his light duty assignments, and the investigation is somewhat attenuated. Additionally, there is no evidence in the record to support an inference of retaliatory intent or ongoing antagonism against McGlone. Rather, the record demonstrates that PGW followed its normal procedures in its investigation of workplace violence. The District Court's grant of summary judgment to PGW on this claim was proper.[4]

V.

Finally, we turn to McGlone's constructive discharge claim. Pennsylvania applies a two-year statute of limitations to wrongful discharge claims. *See Anderson v.*

---

[4] McGlone suggests that the District Court improperly required him to demonstrate that he was actually disabled to proceed with his retaliation claim. Because we find that McGlone failed to produce sufficient evidence of either an adverse employment action or causation, we need not reach this argument.

*Consol. Rail Corp. ("Conrail")*, 297 F.3d 242, 251 (3d Cir. 2002). The District Court properly determined that McGlone's constructive discharge claim, which was filed approximately nine months after the statute of limitations lapsed, was time-barred. Thus, the grant of summary judgment to PGW on this claim was proper.

VI.

We will affirm the order of the District Court entered January 20, 2017, granting summary judgment in favor of PGW.