**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1221
_____

SUSAN GALETTE,
                                        Appellant

v.

AVENUE 365 LENDING SERVICES LLC;
NEWREZ LLC,
also operating as Caliber Home Loans, Caliber Home Funding
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:22-cv-02778)
District Judge: Hon. Kai N. Scott
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 6, 2024

Before: SHWARTZ, MATEY, and McKEE, *Circuit Judges*

(Filed:  February 7, 2025)
_____

OPINION*
_____

---

*This disposition is not an opinion of the full Court and, under I.O.P. 5.7, does not constitute binding precedent.

MATEY, *Circuit Judge*.

Susan Galette claims she was terminated by her employer Avenue 365 Lending Services LLC (Avenue 365) due to her disability and age. The District Court granted summary judgment for the Defendants on all claims and, finding no error, we will affirm.

**I.**

In 2012, Galette began working for Avenue 365, a title insurance and settlement company. Galette was hired as a "funding specialist" and initially worked in office but, following the arrival of COVID-19 in March 2020, company employees began working from home. Only three funding department employees—Galette not among them—could print and scan checks outside the office. By July 2020, Avenue 365 discontinued remote printing and scanning, and the funding specialists returned to the office. Galette, however, continued working remotely because of a recently diagnosed medical condition.

Avenue 365 then required all funding specialists to work in office full time by July 2021. Galette was informed that she would need to return to the office or provide an updated medical certification to justify her need to work remotely. Galette provided the documentation and Avenue 365 approved her request to work remotely through December 2021.

In January 2022, Galette requested to permanently extend her work-from-home accommodation. But Avenue 365 informed Galette that she would be terminated if she did not return to the office. When Galette did not return, she was terminated. Avenue 365 did not hire a replacement for Galette. Indeed, the funding department had not hired

2

employees since 2021 and, in 2022, Avenue 365 implemented a company-wide hiring freeze and underwent several reductions in force.

Galette filed suit against Avenue 365 and Newrez, LLC, a separate entity that provided legal and administrative services to Avenue 365. She alleged violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213 (ADA), the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (ADEA), and the Pennsylvania Human Relations Act, 43 Pa. Stat. and Cons. Stat. §§ 951–963 (PHRA). The District Court entered summary judgment for the Defendants on all claims, concluding that Galette failed to establish a prima facie case of disability or age discrimination and that any nondiscriminatory basis for her termination was not pretextual. Galette now appeals.[1]

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367(a). This Court has jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment. *See Morgan v. Allison Crane & Rigging LLC*, 114 F.4th 214, 220 (3d Cir. 2024). "[A]pplying 'the same standards and presumptions as the District Court,'" *Mid-Century Ins. Co. v. Werley*, 114 F.4th 200, 207 (3d Cir. 2024) (quoting *Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.*, 939 F.3d 243, 249 (3d Cir. 2019)), "[w]e grant summary judgment 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law,'" *Morgan*, 114 F.4th at 220 (quoting *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 501 (3d Cir. 2010)).

## II.

Galette's disability and age discrimination claims are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[2] *See Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667–68 (3d Cir. 1999) (disability discrimination); *Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997) (en banc) (age discrimination). Galette bears the burden of production and must establish a prima facie case of discrimination. *See Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009).

To establish a prima facie case of disability discrimination, Galette must show: 1) she has "a disability within the meaning of the ADA"; 2) she is "otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer"; and 3) she has "suffered an otherwise adverse employment decision as a result of discrimination." *Morgan v. Allison Crane & Rigging LLC,* 114 F.4th 214, 221 (3d Cir. 2024) (quoting *Eshleman v. Patrick Indus., Inc.*, 961 F.3d 242, 245 (3d Cir. 2020)). A prima facie case of age discrimination requires Galette to establish: 1) she was "at least forty years old"; 2) she "suffered an adverse employment decision"; 3) she "was qualified for the position in question"; and 4) she "was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir.

---

[2] Galette's PHRA claims are analyzed under the same framework as her ADA and ADEA claims. *See Colwell*, 602 F.3d at 499 n.3. Accordingly, the following analysis of her federal law claims applies with equal force to her state law claims.

2015). Because Galette was "not directly replaced," she can fulfill the fourth element with "facts which 'if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" *Id.* (quoting *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 (3d Cir. 1999)).

If Galette satisfies these elements, "the burden of production shifts to the employer to identify a legitimate non-discriminatory reason for the adverse employment action." *Smith*, 589 F.3d at 690. "If the employer does so, the burden of production returns to [Galette] to demonstrate that the employer's proffered rationale was a pretext for" discrimination. *Id.*

### A.

Galette has failed to establish a prima facie case of disability discrimination because she has not shown she can perform the essential functions of a funding specialist, with or without reasonable accommodation.[3] Whether a function is essential "is a factual determination that must be made on a case by case basis [based upon] *all* relevant evidence." *Turner v. Hershey Chocolate USA*, 440 F.3d 604, 612 (3d Cir. 2006) (alteration in original) (quoting *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 148 (3d Cir. 1998) (en banc)). In determining what functions are essential, "consideration shall be given to the employer's judgment," as well as a written job description "if an employer

---

[3] The parties do not dispute that Galette is disabled or suffered an adverse employment action. Her prima facie case of disability discrimination therefore hinges on whether she was otherwise qualified to perform the essential functions of a funding specialist.

5

has prepared [one] before advertising or interviewing applicants for the job." 42 U.S.C. § 12111(8).

Avenue 365 considered a funding specialist's essential functions to include "printing, scanning and disbursing checks, releasing wires, facilitating the timely funding of loans, handling files disbursed by third-party partners, overnighting checks, booking or posting wires and deposits, handling mail, answering emails, making phone calls, and handling attorney wires." App. 19. It put forth a funding specialist job description that echoed those functions, and claimed that by 2021, the only functions that could be performed at home were "answering emails, making phone calls, and handling attorney wires." App. 19.

Galette argued that "three other employees who were operating as [f]unding [s]pecialists worked remotely and did not perform the same functions that Avenue 365 alleges were essential." Opening Br. 23. But those employees, Drew Pollack, Tiffany Lastinger, and Fonda Aguwa,[4] are improper comparators. Pollack, as a senior funding specialist, had a different title and, by Galette's own admission, "had a different skill set and provided a different level of experience." App. 61. And unlike Galette, who "had completed these duties – in the office – for nearly a decade prior to the pandemic," Response Br. 23, Lastinger and Aguwa were hired to work remotely because Avenue 365 "could not find enough people to join the funding team locally," App. 131. Moreover,

_____

[4] There appears to be disagreement among the parties as to the correct spelling of this employee's name. For the avoidance of doubt, we will adhere to the District Court's spelling of "Fonda Aguwa." App. 10.

6

Lastinger left the company approximately five months before Galette's termination and Aguwa was part of a reduction in force seven months after the termination.[5] Accordingly, there is no genuine dispute that the essential functions of a funding specialist were those outlined by Avenue 365.

Nor could Galette perform these essential functions, with or without reasonable accommodation. Because only three of a funding specialist's essential functions could be completed remotely, Galette could not perform certain essential functions of her position without reasonable accommodation. She claims, however, that the only accommodation needed was "to be provided with a printer to accomplish th[ose] function[s] remotely." Opening Br. 27. But the burdens of an accommodation cannot be "clearly disproportionate to the benefits that it will produce." *Gaul v. Lucent Techs. Inc.*, 134 F.3d 576, 580–81 (3d Cir. 1998) (quoting *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995)). And Avenue 365 discontinued the remote printing and scanning of checks almost five years ago due to security concerns, such that Galette's "proposed accommodation would impose a wholly impractical obligation." *Id.* at 581. Accordingly,

---

[5] All that remains is Galette's bare contention that she "mainly handled attorney files." Dist. Ct. Dkt. 31-5 at 4. True, evidence that may be considered in determining the essential functions of a position includes "[t]he amount of time spent on the job performing the function." *Turner*, 440 F.3d at 612 (quoting 29 C.F.R. § 1630.2(n)(3)). But Galette's assertion ignores her admission that she had performed the functions Avenue 365 deemed essential for almost ten years while working in office. Nor is it surprising that Galette did not devote much, if any, time to these functions while working outside the office because only "answering emails, making phone calls, and handling attorney wires" could be done remotely. App. 19.

the District Court did not err in granting summary judgment on Galette's disability discrimination claim.

**B.**

The shortcomings of Galette's disability discrimination claim similarly forestall her failure to accommodate claim. There is "significant interplay" between discrimination and failure to accommodate claims under the ADA, such that the latter "may be viewed simply as a type of discrimination claim, where the relevant adverse employment action is the employer's 'refus[al] to make reasonable accommodations for a[n employee's] disabilities.'" *Fowler v. AT & T, Inc.*, 19 F.4th 292, 306 (3d Cir. 2021) (alterations in original) (quoting *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 504 (3d Cir. 2010)). A failure to accommodate claim requires the employee to show that she is "qualified to perform the essential functions of the job." *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 186 (3d Cir. 2009).

As discussed above, Galette "has not met her burden to show that she is otherwise qualified for her position," *Fowler*, 19 F.4th at 307, because she cannot demonstrate that she is able to perform the essential functions of her job. And an employer is "not required to accommodate an employee by removing an essential function or restructuring a job so as to avoid it." *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 285 n.4 (3d Cir. 2001). Because Galette cannot sustain a failure to accommodate claim, the District Court properly granted summary judgment.

As for her age discrimination claim, Galette has not shown that she was terminated "more likely than not based on the consideration of impermissible factors." *Willis*, 808 F.3d at 644 (quoting *Pivirotto*, 191 F.3d at 352). She claims this element was satisfied because "other substantially younger [f]unding [s]pecialists (including at least one working remotely) remained employed when [she] was terminated." Opening Br. 34. "In order to determine who might qualify as a similarly situated employee we must look to the job function, level of supervisory responsibility and salary, as well as other factors relevant to the particular workplace." *Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 305 (3d Cir. 2004). Because Galette was "not able to perform all of the duties of a funding specialist at home," App. 134, she did not have "the same job responsibilities" as in-office funding specialists, *Monaco*, 359 F.3d at 305, rendering them improper comparators. It is true, as discussed above, that Aguwa, a substantially younger funding specialist who worked remotely, was not terminated at the same time as Galette. But "evidence of more favorable treatment cannot be viewed in a vacuum" and instead "the record must be viewed as a whole." *Willis*, 808 F.3d at 646. And although not terminated in April 2022 alongside Galette, Aguwa was part of a reduction in force only seven months later. Taken together, there is insufficient evidence that a similarly situated, substantially younger employee was treated more favorably than Galette.

Galette points to an advertisement for a remote funding specialist position, posted one month after she was terminated, as evidence of impermissible factors considered in

her termination. We have explained that an example of a defendant-employer considering impermissible factors in the termination of a plaintiff-employee "would be when a defendant 'continued to seek applicants from among those having plaintiff's qualifications.'" *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 267 (3d Cir. 2021) (quoting *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 698 (3d Cir. 1995)). But when this advertisement was posted, there was no such position available at Avenue 365. Indeed, the funding department had not hired anyone since 2021 and, in 2022, Avenue 365 implemented a company-wide hiring freeze and underwent several force reductions. So while Avenue 365 may have posted an advertisement, it was not seeking applicants such that the company considered impermissible factors in terminating Galette.

And even if Galette had demonstrated a prima facie case of age discrimination, she failed to show that Avenue 365's reason for terminating her was pretextual. *See, e.g.*, *Healy v. N.Y. Life Ins. Co.*, 860 F.2d 1209, 1220 (3d Cir. 1988) (explaining that a plaintiff "must not only introduce evidence from which a reasonable person could infer that he is qualified" but "also must introduce evidence that casts doubt on his employer's contention that there was a legitimate business justification for letting him go"). Indeed, Galette admitted that her termination stemmed from her failure to return to in-office work:

> Q. She told you if you came into the office, you [would] have a job, correct?
> A. Right, correct.
> Q. But if you didn't come into the office, you would not have a job?
> A. Correct.

10

App. 62. Accordingly, the District Court did not err in granting summary judgment on Galette's age discrimination claim.[6]

* * *

The District Court did not err in granting the Defendants' motion for summary judgment. So we will affirm.

---

[6] Having determined that the District Court did not err in granting summary judgment on Galette's claims, we decline to consider whether Newrez should be held liable as her employer alongside Avenue 365.